UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

G. MATT JOHNSON
LORA HUBBEL
        Plaintiffs

vs

SHANTEL KREBS, in her
official capacity as Secretary
of State for the State of
South Dakota

Civil Action No.
4:18-cv-04108-KES

Memorandum in Support of Plaintiff's
Motion for Preliminary
Injunction

August 31, 2018

## Memorandum in Support of Plaintiff's Motion for Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65, the plaintiffs  G Matt Johnson and Lora Hubbel hereby request that this Court enjoin the defendant Shantel Krebs, Secretary of State for the State of South Dakota, from printing the South Dakota ballots for the November 2018 general election without the names of the all the Constitution Party candidates included on their rightful ballot. This includes U.S. House of Representatives, G Matt Johnson; SD Governor, Lora Hubbel; SD Lt Governor, Tara Volesky; SD House District 29, Kathreine Rice; SD House District 32, George Ferebee; SD Senate District 34, Janette McIntyre.

This case implicates plaintiffs Johnson's and Hubbel's fundamental right under the First and Fourteenth Amendments of the U.S. Constitution. The plaintiffs' civil rights are presently threatened by Secretary Krebs's failure to provide equal ballot access to the Constitution Party Candidates.

The plaintiffs are entitled to preliminary injunctive relief. A preliminary injunction is justified because: (1) the plaintiffs has a sustainable likelihood of success on the merits of their claim because the defendant's action is unconstitutional; (2) irreparable harm will result if the preliminary injunction is not issued because The Constitution Party Candidates will not appear on the general election ballot.; (3) the Constitution Party of South Dakota will cease to exist as a political party due to a Federal lawsuit demanding they have a state-wide candidate in the 2018 general election in order to be a viable party (SDCL 12-1-3 (12); (4) If the Constitution Party of SD does not get on the ballot they must face the arduous task of petitioning to gain party status again which has been inferred as a high bar to attain in the Federal lawsuit, Case 4:15-cv-04111-LLP. (5) the balance of hardship favors the plaintiffs in the granting of preliminary injunctive relief; and (6) it is in the public's interest to unnecessarily disenfranchise third party voters in general and Constitution Party members specifically.

### Statement of Facts

The facts which gave rise to this lawsuit began when the Constitution Party of South Dakota and any other new political party that becomes a recognized party for the 2018 election cycle were allowed to nominate their state wide and legislative candidates at their statewide party convention which include candidates for: US House, Governor and the Legislature. We are secured this action under SDCL 12-5-21, which states:

Nomination of state candidates not voted on at primary--Presidential electors and national committee members. The state convention shall nominate candidates for lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, and public utilities commissioner and in the years when a President of the United States is to be elected, presidential electors and national committeeman and national committeewoman of the party.

July 13, the Constitution Party removed Lori Stacey as chair for cause when it was found that (1) records and minutes were missing: (2) required duties were not completed and: (3) she did not live and had not lived in South Dakota for over a year. Instead of remaining on as Treasurer, Lori Stacey again determined herself as chair and started a new "constitution party". Per examination of Secretary of State records, Lora Hubbel was the last recognized chair. With consultation the secretary of state, remaining board member Joel Bergan and with guidance from the National Constitution Party Chair and Parliamentarian, Lora Hubbel was told she was the chair late in that afternoon. It was understood it to be a Pro-tem chair position until records could be further examined.

July 13, Due to the fact the Republican Party challenged two other political parties' certification of candidates; a pre-emptory second convention was called by Lora Hubbel being it was the last day to call before the August 14 deadline.

On July 14, 2018, the Constitution Party of South Dakota had its Nominating Convention in Sioux Falls. Although it was called by Lori Stacey and officially recognized, Lori Stacey did not attend the convention. The convention was opened by Lora Hubbel. She introduced with an agenda to resign as chair under "new business" and open up nominations for a new chair, which Gordon Howie and Lori Stacey were assumed to compete for the position. After the agenda was approved, the meeting was turned over to Joel Bergan as Chair of the Convention, This convention was obstructed at every turn by James Biolata, ( appointed secretary by Lori Stacey) to the point where he was voted to be removed from the convention and yet he refused to leave. The commotion was impossible to conduct any business so the convention was adjourned and recessed to be continued on August 14 in Pierre.

However on July 15 Lori Stacey also called for her own alternative second convention to be held on August 14 in Pierre, less than the 30 day requirement to call for a convention.

July 21 the Constitution Party board met in Chamberlain to fill the board with new members. Lori Stacey was officially treasurer and was asked to give a report on all finances but she did not show and was voted off the board. Joel Bergan resigned as Chair and became a voting member as Immediate Past Chair; Gordon Howie became Chair; G Matt Johnson, Vice Chair; Lora Hubbel, Secretary and Janette McIntyre agreed to be treasurer if a new account was created and she did not

have to be responsible for any past treasurer expenditures.  The minutes of that meeting show the conflicted by-law was addressed and resolved, but recall we were not to file any of this information to the Secretary of State's office. This was one of the points mentioned in the upcoming lawsuit. Sometime thereafter the new chair, Gordon Howie, began communication with Secretary of State Shantel Krebs regarding the upcoming lawsuit and between the two; they decided it was not in our best interest to file any further information to the Secretary of State's office until after the lawsuit. When this was questioned by the Board, Gordon Howie says he was told by Shantel Krebs that we were covered with her legal representation, the Attorney General' office.

August 1, 2018 Dan Lederman and the Republican Party filed a Writ of prohibition to prevent Secretary of State Shantel Krebs from certifying the Constitution Party's candidates. Court date is August 16, 2018. Sixth Judicial Circuit 32Civ18-000147

August 14 the Constitution Party Nomination Convention met in Pierre and selected a slate of candidates that was filed with the Secretary of State.

August 15, we were told not to go to the court hearing in Pierre by Chair Gordon Howie even though our lawyer, David Braun, was quitting our case due to threats from Terry Lafluer (alternative Party Governor Candidate).

August 15, the day before the court date, Justin Bell (Republican Lawyer) sent a subpoena to our only advocate, Joel Bergan. He is called the "Chair" for the case because we were not allowed to file Joel's resignation or allow the new chair to be known officially, "It would only confuse the issue", and we were told by Shantel Krebs though Gordon Howie. However the Certification of Service was send regular US Mail which did not reach Joel Bergan until well after the hearing was over. Proof of service was written on August 17, a day after the hearing and after the judge had made her decision against us.

## ARGUMENT

**PLAINTIFF'S MOTION FOR PRLIINARY INJUNCTION SHOULE BE GRANTED BECAUSE DEFENDANT'S ACTION IN THIS CASE IS UNCONSTITUTIONAL, IRREPARABLE HARM WILL RESULT ABSENT THE INJUNCTION, BALANCE OF HARM FAVORS THE PLAINTIFFS, AND IT IS NOT IN THE PUBLIC'S INTEREST TO DENY THIRD PARTIES BALLOT ACCESS OR ALLOW MEDDLING OF ONE PARTY IN THE AFFAIRS OF ANOTHER.**

The factors this Court must consider in deciding whether to exercise its equitable power and enter a preliminary injunction are: (1) the probability of success on the merits; (2) the threat of

irreparable harm if the injunction is denied; (3) the balance between such irreparable harm if no preliminary injunction issued and the injury granting the injunction will inflict on the non-moving party if enjoined; and (4) the effect of the court's ruling on the public interest. *DataPhase Systems, Inc. v CL Systems, Inc,.* 640 F.2d 109,114 (8th Cir 1981) (en banc). This memorandum addresses the four factors of *DataPhase* in sequence below that this Court must consider in deciding whether to enter a preliminary injunction.

1.   **Plaintiff Will Succeed on the Merits**

The inquiry for the Court to resolve under the first factor in *DataPhase* is to determine the probability of the plaintiff's success on the merits on their claims

The present case before the Court is a ballot access case by the Constitution Party of South Dakota who seeks to fill their slate of candidates denied them by the results of a the aforementioned lawsuit brought against them by the Republican Party of South Dakota.

The Federal lawsuit, Case 4:15-cv-04111-LLP, filed 02/21/18 recognized that South Dakota has made it hard for any party other that majority parties to be effective and viable in the political terrain. In fact this Memorandum Opinion and Order states, "Although "reasonable election regulations may, in practice, favor the traditional two-party system," Green Party of Arkansas v. Martin, 649 F.3d 675, 684 (quoting Timmons v.Twin Cities Area New Party, 520 U.S. 351, 367 (1997)), they may not serve the purpose of allowing the same two parties "to retain a permanent monopoly on the right to have people vote for or against them."

Indeed, the majority party which has maintained control for decades, the South Dakota Republican party has been so bold to maintain its power, that they have challenged every South Dakota political convention and certified candidate of competing parties for the 2018 South Dakota general election. It challenged the Democrat Party for filing a day late; a debatable infraction. The Democrat party held a second convention to rectify their certified candidates. This caused much angst and added time and money. The Republican Party also challenged the Libertarian Party and caused them to call a second convention, losing 30 days of campaigning time for their candidates.

The Republican Party then challenged the newly formed Constitutional Party by imposing itself, via a Writ of Prohibition (Sixth Judicial Circuit 32CIV18-000147) into its family squabbles and taking advantage of the Constitution Party's growing pains as a fledgling party that is trying to find its wings in the political arena.

This was an attempt by the Republican Party to kill any competition and to maintain its absolute control it has enjoyed for several decades. The accusations by the Republican lawsuit are baseless and trickery was used to prevent the truth from surfacing that would have refuted the allegations of 1) a conflict between by-laws and State law and 2) no official chair of the party called the second convention.

The Constitution Party of South Dakota removed Lori Stacey as Chair for cause and because of poor record keeping it was determined Lora Hubbel was the last recorded legal Chair of the Party. When proper forms were submitted over 17 months late (and *during* the first Convention on July 14), Joel Bergan was determined to be Chair. He never official resigned, but at first he hesitated and when he determined he would accept the chair position, Lori Stacey told him it was "too late" and self-appointed herself as chair and treasurer thereby having full and sole control over the funds of the party, which is inferred by the bylaws to be unacceptable. When Constitution Party members wanted to correct the dual office holdings by Lori Stacey, she bolted and broke off to form an "alternative Constitution Party" which is not recognized by the current and true board. Even though there were internal problems which were addressed by a board meeting, the Republican Party had no authority to demand a Writ of Prohibition and then prevent the Constitution Party from attending the hearing in Pierre to prove their case.

In ballot access cases, the level of scrutiny required depends on the degree to which the state's election law impacts the rights protected by the first and fourteenth Amendments to the U.S. Constitution. In addressing these concerns, the Court in *Anderson* wrote: "Our primary concern is with the tendency of ballot access restrictions 'to limit the field of candidates from which voters might choose.'" *Id at 787, citing Bullock v. Carter,* 405 U.S. 135, 143 (1972). " The exclusion of candidates," the Supreme Court decided in Anderson, "burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens." 460 U.S. at 787-788

The present case before the Court parallels many of the same issues raised in *Anderson* and related Federal court cases. Here the entire slate of Constitution Party candidates are denied equal ballot access because of the actions of the Republican Party to impose itself in the internal struggles that the newly formed Constitution Party is experiencing. Since the SDCL 12-6-64 states very clearly election law is to be liberally construed so the real will of the voters may not be defeated by a mere technicality. Because the Republican Party did not know who was the Constitution chair at the time in order to call the second convention, and because they did not know that we had remedied the conflicted bylaw, they sued the SD Secretary of State to refrain from certifying the Constitution Party's candidates and denying them ballot access, because of a mere technicality. In making matters worse, The Constitution Party was steered by the Republican Secretary of State into actions that harmed their ballot access. It is a well-founded principle that states are given considerable latitude in enacting election laws.

The plaintiffs urge the Court to consider the high degree harm to which denying ballot access has been inflicted on the Constitution Party candidates and members if the Secretary of State yields to the decision of the Republican Lawsuit 32CIV18-000147. If allowed to stand, this ruling will severely burden the First Amendment and Fourteenth Amendment rights of the Candidates and

members of the Constitution party and allows for the meddling of one party to impose its will over another party by improperly serving a summons on the Constitution Party's representative, Joel Bergan, so that he had no notice of the need of his presence in Pierre for the Republican lawsuit, 32CIV18-000147.

For the reasons states above, the first and most critical factor under *Dataphase* for the Court to consider in determining whether to grant preliminary injunctive relief is met because plaintiffs Johnson and Hubbel have a substantial likelihood to succeed on the merits of their claims because the defendant's actions is unconstitutional.

## II.   Irreparable Harm Will Result Absent an Injunction

The inquiry for the Court to resolve under the second factor in DataPhase is what will result if the preliminary injunction is not issued. Plaintiffs argue that irreparable harm will indeed result if the preliminary injunction is not issued because the Constitution Party Candidates will not appear on the ballot for the 2018 general election.

And because allowing the Writ of Prohibition will mean the dissolution of their entire party, since candidates are required to be on the November ballot in order to survive. This Writ will make the Constitution party advocates once again try to begin anew with the arduous and expensive petition process. Third parties have been interwoven in our political history and are deemed needed to advance good government and reform.

These facts make clear that the second factor in *Dataphase* is met because irreparable harm will result if the preliminary injunction is not issued for the Constitution Party Candidates to appear on the general election.

## III. The Balance of Hardship Favors the Plaintiffs

The inquiry for the Court to resolve in whether to grant preliminary injunction under the third factor in *DataPhase* is the balance of hardship faced by the plaintiffs and the defendant.

Thus far, plaintiffs Johnson and Hubbel are unaware of any argument being advanced by Secretary Krebs that her office would face any procedural or administrative hardship in placing the Constitution Party official slate of candidates on the ballot in November.

The plaintiffs, on the other hand, face significant hardship if the injunction is not granted. As noted above, plaintiffs Johnson and Hubbel contend this would ruin their chances of ballot access and dissolve the entire Constitution Party outright.

As a result, the third factor in *Dataphase* is met because of the balance of hardship favors the plaintiffs in granting the preliminary injunctive relief.

## IV.  The Public Interest if Furthered by Preliminary Injunction

The fourth and final factor under *Dataphase* that the Court is required to consider in whether to grant a preliminary injunction is the effect of the court's ruling on the public interest.

The South Dakota electorate is best served by a wide-range of qualified candidates willing to tackle and talk about the issues on the campaign trail is of small and great importance to the public. The voters of South Dakota deserve to know the ideas and political philosophies of candidates who are balloted and ready to assume the duties of said offices. A vigorous campaign of different choices and voices cannot be achieved by restrictive ballot access that allows only major party affiliated candidates a say in our most dear freedoms.

Absent the issuance of a preliminary injunction, the slate of Constitution Party candidates will not appear on the November ballot. Such circumstance is not in the public's interest. As a result, the fourth factor in *Dataphase* is easily met.

<u>Conclusion</u>

Based on the factors in Dataphase which guides this Courts determination in whether to grant a preliminary injunction, a preliminary injunction is justified because (1) plaintiffs Johnson and Hubbel have a substantial likelihood of success on the merits of their claims because the defendants actions are unconstitutional: (2) irreparable harm will result if the preliminary injunction is not issued because Johnson and Hubbel along with the entire Constitution Party will not be on the ballot a the entire party will dissolve immediately after the November election: (3) the balance of hardship favors the plaintiff in the granting of the preliminary injunctive relief:: and (4) it is not in the public's interest to keep a third party off the ballot or to dissolve its viability as a party.

For all the reasons stated above, the plaintiffs Johnson and Hubbel respectfully requests that the Court grant the plaintiff's Motion for Preliminary Injunction ad order that Secretary Krebs, and her agents and employees, are enjoined from any application or enforcement against the plaintiffs, and that the defendant should be enjoined from refusing to place the Legal, Certified slate of Constitution Party Candidates on the general election in November.

**REQUEST FOR ORAL ARGUMENT.**

Respectfully submitted,

G MATT JOHNSON
204 S. 7th Ave
Brandon, SD 57005
gmjohnson1@cox.net

*LORA HUBBEL*
*4605 W Graeland Ct*
*Siaux Falls, SD 57106*
*lora hubbel@yahoo.com*

*dated August 31, 2018*

# AMENDED CERTIFICATE OF SERVICE  *4:18-CV-0418-KES*

We hereby certify that the foregoing was served upon the following on the 29th day of August, 2018, by either electronically filing and serving or mailing a true and correct copy thereof to them by first class mail, postage prepaid at their last known address, to wit:

Madame Shantel Krebs, SD Secretary of State
Secretary of State
Capitol Building
500E Capitol Ave, Ste 204
Pierre, SD 57501-5070
[shantel.krebs@state.sd.us]

BY:   G Matt Johnson and Lora Hubbel
       G MATT JOHNSON    LORA HUBBEL

*G. Matt Johnson*

*Lora Hubbel*

*August 30, 2018*