UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| G. MATT JOHNSON, and LORA HUBBEL, <br><br> Plaintiffs, <br> and <br> TERRY LEE LaFLEUR, <br><br> Intervenor Plaintiff; <br><br> vs. <br><br> SHANTEL KREBS, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF SOUTH DAKOTA, <br><br> Defendant. | 4:18-CV-04108-RAL <br><br><br> OPINION AND ORDER DENYING PRELIMINARY INJUNCTIVE RELIEF |

Plaintiffs G. Matt Johnson (Johnson) and Lora Hubbel (Hubbel) filed a Complaint alleging that Defendant Shantel Krebs (Krebs), in her official capacity as the Secretary of State for the State of South Dakota, had improperly denied them and certain other nominees of the Constitution Party of South Dakota (CPSD) positions as candidates on the upcoming ballot in November of 2018, and allegedly had colluded with the Republican Party to keep CPSD candidates off the ballot through a state court proceeding. Plaintiffs, who are proceeding pro se, sought preliminary and permanent injunctive relief. Docs. 1, 7. Plaintiffs initially served Krebs's office by certified mail, but did not comply with SDCL § 15-6-4(d)(6) by serving the Attorney General of South Dakota, and in turn did not properly serve the Summons and Complaint under Rule 4 of the Federal Rules of Civil Procedure. This Court issued an Order Regarding Service and Answer/Response, Doc.

1

14, on September 12, 2018, noting that there was a defect with service, directing the Plaintiffs to serve the Attorney General of South Dakota as required under SDCL § 15-6-4(d)(6), and giving Krebs seven days after service to answer or otherwise respond, given the time sensitivity of the case.

Krebs responded on September 21, 2018, with a Motion to Dismiss and filed other documents in support of the Motion to Dismiss. Docs. 20, 23. Krebs asserts that service was insufficient and that this Court lacks jurisdiction because the issues in the case are moot, the Rooker-Feldman doctrine should apply, and that issue preclusion bars the relief sought. Plaintiffs filed a Motion for Summary Judgment, Doc. 21, and an Affidavit of Joel Bergan, Doc. 22. This Court set a motion hearing to occur on September 27, 2018. The day before the motion hearing, Terry Lee LaFleur (LaFleur) filed a separate complaint naming as defendants Krebs, Hubbel, Johnson and others to assert that LaFleur, instead of Hubbel, ought to be certified as the CPSD candidate for Governor of South Dakota and seeking $100 million in damages plus punitive damages and other relief. LaFleur v. Krebs, 18-CV-4125-RAL, Doc. 1. On the morning of the hearing, LaFleur filed a motion to intervene as a party in this case. Doc. 31.

Johnson, Hubbel, and LaFleur appeared pro se at the hearing, and Krebs appeared through counsel. This Court heard at length from each party and issued rulings on certain issues from the bench, which are memorialized and formalized herein.

I.  Facts[1]

Krebs is the duly-elected Secretary of State for South Dakota. Johnson is a CPSD member who claims to be the duly-nominated CPSD candidate for U.S. House of Representatives from

---

[1]This Court has pieced together the facts from the pleadings to date and what the parties all seemed to acknowledge as true during the hearing. This Opinion and Order is not a final judgment, and the content of this section should not be taken as findings of fact.

2

South Dakota for the November of 2018 election. Hubbel and LaFleur both are CPSD members who have competing claims to be the duly-nominated CPSD candidate for Governor of South Dakota in the upcoming election. CPSD is a fledgling political party in South Dakota that presently is embroiled in turmoil over both who is the chairman of the party and who the party's candidates are for the November of 2018 election.

The controversy over who is the CPSD chairman and, in turn, over whose submissions to Krebs deserve credence has roots back in 2017. Before February 2, 2017, Hubbel was CPSD's chairman, and the documents on file with Krebs reflected that Hubbel was CPSD's chairman. Doc. 29-1 at 13. On February 2, 2017, Hubbel resigned as chairman because she planned to rejoin the Republican Party, thereby leaving the chairmanship to the vice-chairman Joel Bergan (Bergan). See Doc. 29-1 at 15. Bergan initially waffled about whether he wanted the responsibility of CPSD chairman, and Lori Stacey (Stacey) who was CPSD's Secretary/Treasurer seemingly assumed the position as chairman, though Bergan likewise had a claim to being chairman. LaFleur believes that Stacey was the actual chairman as of February of 2017, and points to a Statement of Organization filed by Stacey with Krebs and approved on February 6, 2017, listing Stacey as CPSD's Chairman and Treasurer. Doc. 29-1 at 20; Doc. 31. Johnson and Hubbel believe that Stacey never could be CPSD chairman because she was not truly a South Dakota resident, that she filed the form with her name listed as chairman in error, and that the chairmanship remained with Bergan. Regardless, other than what can be taken from the Statement of Organization, Krebs was not informed of a reshuffling of CPSD's officers in February of 2017, and from Krebs's perspective the CPSD chairman remained Hubbel.

Hubbel, who had served in the South Dakota Legislature as a Republican in 2011–2012, ran unsuccessfully in the Republican primary in June of 2018 to become the Republican candidate

for Governor of South Dakota. After losing in the Republican primary, on June 22, 2018, Hubbel rejoined the CPSD, Doc. 29-1 at 31, and around the same time Johnson and another former Republican state legislator Gordon Howie (Howie) likewise joined the CPSD. Hubbel and Howie reportedly had been ostracized from the South Dakota Republican Party, the dominant political party in this state. LaFleur became a CPSD member in April of 2018 and views Hubbel and Howie as part of a Republican Party plot to infiltrate and destroy the CPSD.

The existence of competing factions of the CPSD resulted in some chaos in the CPSD in July and August of 2018. The CPSD had a convention scheduled for July 14, 2018, at which it presumably intended to nominate candidates for some statewide offices. South Dakota law recognizes two main ways that individuals can become candidates for office: 1) through the primary election process found at SDCL § 12-6; and 2) by party nomination at a convention under SDCL § 12-5. Haan v. Gant, No. CIV. 14-3009-RAL, 2014 WL 4743423, at *7–8 (D.S.D. Sept. 23, 2014). This case involves the convention process. When a political party nominates its candidates through a convention, SDCL § 12-5-17 imposes a notice requirement:

> Each political party shall hold a state convention in each even-numbered year in which they are necessary for the purposes of § 12-5-21. The time and place of holding such convention shall be determined by the State Central Committee of each political party, the chairman of which shall notify the secretary of state at least thirty days previous to the date so chosen.

SDCL § 12-5-17.[2] There appears not to have been notice given to Krebs thirty days before the planned CPSD convention set for July 14, 2018, and indeed it appears two people believed themselves entitled to act as CPSD chairman as that convention neared.

---

[2]The constitutionality and in turn enforceability of the thirty-day prior notice provision is subject to question but not framed for this Court's decision here. Section 12-5-17 refers to conventions under § 12-5-21, which provides:

4

On July 13, 2018, Hubbel contacted the National Constitution Party about Stacey's claim to be the CPSD chairman. Doc. 29-1 at 21. A representative of the National Constitution Party sent an email message to Hubbel stating that documents at Krebs's office showed Hubbel to remain chairman and that Stacey could not assume the position of chairman. Doc. 29-1 at 21. The National Chair of the Constitution Party sent Stacey a letter telling her that she could not act as CPSD chairman. On July 13, 2018, Hubbel sent to Krebs notice of a convention for the CPSD to

---

> The state convention shall nominate candidates for lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, and public utilities commissioner and in the years when a President of the United States is to be elected, presidential electors and national committeeman and national committeewoman of the party.

SDCL § 12-5-21. In early 2018, Judge Piersol held that "South Dakota's ballot access laws result in discrimination against new party candidates seeking an office not listed in SDCL § 12-5-21." Libertarian Party of S.D. v. Krebs, 290 F. Supp. 3d 902, 915 (D.S.D. 2018). Because this unequal treatment was not justified by a compelling state interest, Judge Piersol concluded that it violated the Equal Protection Clause. Id. Apparently in response to Judge Piersol's ruling, the South Dakota Legislature enacted SDCL §§ 12-5-25 and 12-5-26. Section 12-5-25 provides:

> A political party with alternative political status may nominate a candidate for United States Senate, United States House of Representatives, Governor, and any legislative seat by convention, if the nomination is submitted with the proper documentation to the Office of the Secretary of State no later than 5:00 p.m. central time on the second Tuesday in August, of the year of the election. A candidate registered with a political party with an alternative political status may choose, if allowed by the party bylaws, to participate in a primary election by submitting a candidate petition no later than the last Tuesday of March in accordance with § 12-5-1.4.

SDCL § 12-5-25. Section 12-5-26 reads:

> A new political party may nominate a candidate for United States Senate, United States House of Representatives, Governor, and any legislative seat by convention, if the nomination is submitted with the proper documentation to the Office of the Secretary of State no later than 5:00 p.m. central time on the second Tuesday in August, of the year of the election.

SDCL § 12-5-26. Thus, if the CPSD were proceeding under § 12-5-25 or § 12-5-26, the notice requirement in § 12-5-17 may not apply.

be held in Pierre, South Dakota on August 14, 2017. Doc. 24 at ¶ 5; Doc. 29 at ¶ 21; Doc. 29-1 at 28. Hubbel signed the notice representing that she was the chairman of the CPSD. Doc. 24 at ¶ 5.

The CPSD convention on July 14, 2018, apparently was chaotic. Before Stacey arrived, Hubbel resigned as chairman to allow Bergan to be chairman, but Bergan was uncomfortable with the rules of order and allowed Howie to be acting chairman or perhaps convention chairman. LaFleur was there, and he and at least one other felt that the CPSD convention was being hijacked. Hubbel reports that her files were stolen during the convention, although LaFleur viewed them as being picked up after being abandoned. The convention ended without any slate of CPSD candidates being selected.

On Sunday, July 15, 2018, Krebs received an email sent from or for Stacey giving notice that the CPSD would be holding a convention in Pierre on August 14, 2017. Doc. 24 at ¶ 6. Stacey claimed in the email that she was the chairman of the CPSD. Doc. 24 at ¶ 7. On July 17, 2018, Krebs, having now received two separate notices of CPSD convention signed by two different people purporting to be CPSD chairman, sent a letter to the CPSD explaining that South Dakota law requires certification of the state party chairman to the secretary of state. Doc. 24 at ¶ 7. Krebs's letter asked CPSD to certify who held the position of party chairman. Doc. 24 at ¶ 7. On July 20, 2018, Hubbel sent Krebs notice that Bergan had assumed the position of CPSD chairman. Doc. 29-1; Doc. 24 at ¶ 8.

On July 21, 2018, certain members of the CPSD held a meeting "to establish an official full and functioning Constitution Party Board." Doc. 29 at ¶ 27. Apparently, Bergan resigned as chairman of the Hubbel/Bergan faction of the CPSD during this meeting and Howie became the chairman. Doc. 29-3; Doc. 29 at ¶¶ 27–28. LaFleur was not present or aware of the meeting and

considers the July 21 meeting to be an invalid secret meeting. LaFleur stresses that some documents from the Hubbel/Bergan faction at this time refer to the "South Dakota Constitution Party" rather than the properly named "Constitution Party of South Dakota," although it is clear that the Hubbel/Bergan faction was not starting some new party but attempting to act for the existing CPSD.

On August 1, 2018, Dan Lederman (Lederman), the chairman of the South Dakota Republican Party, sought a writ of prohibition against Krebs requesting that a state court prohibit Krebs from certifying the CPSD's candidates for the 2018 general election. Doc. 25-2. Lederman for the South Dakota Republican Party had taken legal action to seek to keep candidates from the South Dakota Democratic Party and the South Dakota Libertarian Party off the ballot as well. Among other things, Lederman argued that the notices of convention from Hubbel and Stacey were improper under South Dakota law because neither woman was the duly elected or appointed chairman of the CPSD. Doc. 25-2. The case was assigned to the Honorable Patricia DeVaney of South Dakota's Sixth Judicial Circuit. Lederman served Bergan on August 1, 2018, when it filed the action. Doc. 22 at ¶ 6; Doc. 23 at 11. On August 3, 2018, Judge DeVaney issued an order temporarily prohibiting Krebs from placing any CPSD candidates on the 2018 general election ballot and requiring that Krebs appear for a hearing on August 16, 2018, to show cause why the temporary prohibition should not become permanent. Doc. 25-3. Lawyers for Krebs from the Attorney General's office participated by telephone when Lederman on behalf of the Republican Party obtained the temporary writ of prohibition, but no one from the CPSD participated.

Plaintiffs allege that Howie told other board members of the CPSD that he had spoken with Krebs and the two of them had decided that the CPSD should not send Krebs a list of the new

7

CPSD board members selected on July 21, 2018. Doc. 29 at ¶ 31. According to Plaintiffs, Howie told the board members that doing so "would just confuse the issue." Doc. 29 at ¶ 31.

On August 6, 2018, Krebs received an email from Stacey stating that she had resigned as CPSD chairman and that Mike Gunn (Gunn) now held the position. On August 14, 2018, the two competing factions of the CPSD held their conventions at two different hotels in Pierre. Approximately 30 people attended the Hubbel/Bergan faction convention, while just five people attended the Stacey/Gunn/LaFleur faction convention. On August 14, Krebs received separate notices of two slates of CPSD candidates—one from each CPSD faction. Doc. 24 at ¶ 11; Doc. 29 at ¶ 32. The Hubbel/Bergan faction of the CPSD nominated Johnson for United States House of Representatives, Hubbel for governor, Tara Volesky for lieutenant governor, and several candidates for the South Dakota House of Representatives. Doc. 24 at ¶ 11. The Stacey/Gunn/LaFleur faction nominated LaFleur for governor, Rick Gortmaker for lieutenant governor, and Gunn for the public utilities commission. Doc. 24 at ¶ 11.

Plaintiffs allege that on August 15, 2018, Howie told other members of the CPSD board from the Hubbel/Bergan faction not to attend the August 16 court hearing. Doc. 29 at ¶ 33. According to Plaintiffs, Howie said that Krebs would "cover" for the CPSD because they were on the same side of the lawsuit, that he was "quite sure" the CPSD would be on the ballot after speaking with Krebs, and that CPSD members who attended the hearing risked getting questioned and "tripped up" by the South Dakota Republican Party's counsel who was representing Lederman. Doc. 29 at ¶ 33. Krebs disputes having given Howie any such advice. An attorney filed a notice of appearance on behalf of the CPSD in the state litigation, but withdrew before the hearing apparently because of the conflicting positions and infighting among CPSD members. Doc. 8 at 4; Doc. 25-1.

The state court hearing was held as scheduled on August 16, 2018. Doc. 25-5. Lederman for the South Dakota Republican Party attended the hearing with counsel as did two assistant attorney generals representing Krebs. Doc. 25-5. LaFleur and Gunn were also in attendance, and Judge DeVaney allowed LaFleur to intervene in the action. Doc. 25-5. Bergan did not attend the August 16 hearing. Although Plaintiffs assert that Bergan was not at the hearing because the South Dakota Republican Party's attorney issued a belated subpoena to Bergan, Doc. 8 at 4, Doc. 29 at ¶¶ 34–35, Bergan's affidavit suggests that he was nevertheless aware of the hearing before it occurred, Doc. 22 at ¶¶ 3–6.

Judge DeVaney issued an oral decision at the end of the hearing granting Lederman's petition for a writ of prohibition. Doc. 25-5. According to Krebs, Judge DeVaney concluded that there was insufficient evidence to determine who held the office of CPSD chairman and, therefore, who could issue the notice of convention under SDCL § 12-5-17.[3] Doc. 23 at 4. Judge DeVaney ultimately held that the notices of convention from Hubbel and Stacey were both improper under the CPSD's bylaws; although the bylaws require that a convention be held within sixty days of the primary election, the August 14, 2018 convention dates were more than sixty days past the June 5, 2018 primary election. Doc. 23 at 4. Based on the lack of proper notice of convention as required by statute, Judge DeVaney ruled that there could not be a certification of the CPSD nominees chosen at either of the conventions. Doc. 23 at 4. Judge DeVaney issued an amended judgment stating that Krebs "shall be permanently restrained from placing any candidates nominated by the Constitution Party of South Dakota on the 2018 general election ballot." Doc.

---

[3]This Court is relying at this point on Krebs's characterization of Judge DeVaney's ruling because the oral ruling is not in the record. This Court has directed Krebs to obtain and file in this action a copy of the transcript from this hearing and from any hearing that took place when the temporary order entered.

25-5. LaFleur filed an appeal of Judge DeVaney's decision, which is currently pending before the Supreme Court of South Dakota. Doc. 25-6.

South Dakota contracts with an outside vendor to print the State's election ballots. Doc. 24 at ¶ 13. Because the vendor prints general election ballots for multiple states, the vendor sets deadlines by which the states must submit their ballot information. Doc. 24 at ¶ 13. If a state misses its deadline, the vendor will not guarantee that the work will be completed by the delivery date. Doc. 24 at ¶ 13. For the November 2018 election, the vendor required South Dakota to submit its ballot information before August 17, 2018, in order to receive the printed ballots by September 19, 2018, as required by state law, and to commence absentee voting on September 21, 2018, as required by both state and federal law. Doc. 24 at ¶ 13. On August 17, 2018, Krebs certified the statewide candidates to the county auditors under SDCL § 12-8-8.[4] Krebs filed an affidavit in this case saying that all ballots have been printed and delivered to all county auditors in compliance with the requirements of SDCL § 12-16-1.[5] Doc. 24 at ¶ 15.

---

[4]Section 12-8-8 states:
> The secretary of state, not later than the third Tuesday in August at five p.m. before the general election, shall certify to the county auditor of each county within which any voters of this state vote for the officer or officers nominated at the preceding primary, whose certificates of nomination have been filed in the Office of the Secretary of State, or who have been regularly named or petitioned for filling of a vacancy, the name and description of each person so nominated. In years when a President and vice president are nominated and the national party conventions are held at such a late date as to make the foregoing provisions impossible, then, the secretary of state shall make the certification not later than seven days after nominations of such President and vice president.

SDCL § 12-8-8.

[5]Section 12-16-1 states:
> The county auditor shall provide printed ballots for each election in which the voters of the entire county participate. Except as provided in § 12-6-9, printed ballots for a primary election shall contain the name of each candidate who has filed for nomination and is

On August 21, 2018, Hubbel emailed Krebs to say that Bergan had resigned during the July 21, 2018 CPSD meeting and Howie had become the CPSD's chairman. Doc. 29-3. Hubbel attached the minutes for the July 21 meeting to show that Howie was the CPSD chairman. Doc. 29-3. Absentee voting in South Dakota commenced on September 21, 2018 in accordance with SDCL § 12-19-1.2[6] and 52 U.S.C. § 20302. Doc. 24 at ¶ 16.

## II. Discussion of Legal Issues

### A. Rulings on Procedural Matters

This Court at the hearing granted Plaintiffs Johnson and Hubbel leave to file the second amended complaint, Doc. 29, but any further effort to amend the complaint will require compliance with Rule 15 of the Federal Rules of Civil Procedure. This Court at the hearing denied that portion of Krebs's Motion to Dismiss, Doc. 20, which raised an argument regarding insufficiency of service of process. Plaintiffs served by certified mail the Attorney General of South Dakota with the summons and complaint and other documents following the entry of this Court's Order

---

approved. The printed ballots for the election of officers shall contain the name of each candidate whose nomination has been certified or filed with the county auditor in the manner provided by law unless the candidate is deemed elected by having no opposition. The names of the candidates shall appear on the ballot exactly as listed in the declaration of candidacy of the candidates' nominating petitions. Sample ballots shall be printed on paper of a different color from the official ballot but in the same form. The sample ballots and official ballots shall be printed and in the possession of the county auditor not later than forty-eight days prior to a primary or general election. The county auditor shall also prepare the necessary ballots if any question is required to be submitted to the voters of the county. Ballots for general elections shall be of the style and form prescribed in §§ 12-16-2 to 12-16-11, inclusive.

SDCL § 12-16-1.
[6]Section 12-19-1.2 states: "Absentee voting shall begin neither earlier nor later than forty-six days prior to the election including any voter identified as being covered by the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff-1)." SDCL § 12-19-1.2

11

Regarding Service and Answer/Response. Plaintiffs apparently included a return address with postage prepaid, but did not write any address on the envelope and did not include an admission of service form to be signed and returned. The admission of service form is to document that service has occurred, and the self-addressed stamped envelope is to allow the signed admission of service form from the Attorney General's office to be returned to the plaintiffs and in turn to be filed with the clerk of court to document service. Krebs's argument about insufficiency of service—that the failure to address the stamped envelope or enclose an admission of service form to the Attorney General renders the service by certified mail of the summons and complaint on the Attorney General a nullity—is reminiscent of the situation in Wagner v. Truesdell, 574 N.W.2d 627 (S.D. 1998). In Wagner, instead of actual personal service on a defendant with Alzheimer's disease, a process server served the caretaker in the defendant's home who agreed to deliver it to the defendant's attorney. Id. at 628–29. In Wagner, the Supreme Court of South Dakota stated "[t]o follow the strict reading [of the South Dakota service of process statute] urged by [the defendant] would be an absurdity" and found there to be substantial compliance with the statute for service of process. Id. at 630. Here, Plaintiffs at a minimum have substantially complied with SDCL § 15-6-4(d)(6), the statute for service on a state officer like Krebs.

LaFleur filed a motion to intervene just before the September 27 hearing. Doc. 31. At the hearing, this Court read Rules 19(a) and 20(a) of the Federal Rules of Civil Procedure to the parties regarding joinder of parties, and no party objected to granting LaFleur's motion. Under Rule 19(a)(1)(B), LaFleur "claims an interest relating to the subject of the action and is so situated that disposing of the action in [his] absence may: (i) as a practical matter impair or impede [his] ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." LaFleur and Hubbel both

claim to be entitled to be on the November 2018 ballot as CPSD candidates for Governor of South Dakota, and this action has as its core the determination of whether CPSD candidates will be on the November of 2018 ballot in South Dakota. Likewise, under Rule 20(a)(1), permissive joinder of LaFleur as a plaintiff, albeit claiming very different relief than that sought by Hubbel and Johnson, is appropriate because he asserts relief related to the same occurrence and questions of law and fact are common. Thus, this Court grants LaFleur's motion to intervene.

**B. Preliminary Injunction Request**

Rule 65 of the Federal Rules of Civil Procedure concerns injunctions and restraining orders. In determining whether to grant a preliminary injunction, this Court considers the factors set forth in Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc): "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. at 113; see also Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC, 135 F. Supp. 3d 1015, 1019 (D.S.D. 2015) (applying Dataphase factors when considering a request for a preliminary injunction).

There is a threat of irreparable harm to Johnson, Hubbel, and LaFleur from being excluded from the South Dakota ballot in November of 2018. The chances that Johnson, Hubbel, or LaFleur even if listed on the ballot would be elected by South Dakota voters may be remote, given that third-party candidates for governor or Congress in South Dakota have not come close to being elected previously. Nevertheless, the threat of irreparable harm remains because there is no viable opportunity to be a write-in candidate under South Dakota law, and absence from the ballot thereby insures no support from voters. There also is harm to CPSD, which likely will have to reconstitute itself under South Dakota law if it has no candidates on the 2018 ballot. But CPSD is a nonparty

13

to this suit and thus not the "movant" under the Dataphase factors, and CPSD likely needs to reconstitute itself given the paralyzing rift resulting in dueling claims of who is chairman and who leads the party.

The state of balance of this harm and the injury granting the injunction will inflict on other parties favors denying the injunction. Of course, any injunction or order that places Hubbel on the ballot as the CPSD gubernatorial candidate harms LaFleur, and any injunction or order placing LaFleur on the ballot as the CPSD candidate for governor harms Hubbel. The harm to Krebs and the State of South Dakota from enjoining printing and distributing ballots is immense. Ballots have in fact been printed and distributed to county auditors under South Dakota law. Absentee balloting is underway. Enjoining ballot printing or distribution at this late point, or attempting to insert the names of CPSD candidates, would risk chaos and disruption of the voting process. Doing so would subvert the statutes that the South Dakota Legislature has enacted for the orderly determination of who has qualified to be on the ballot and the orderly conduct of elections. See Germalic v. Gant, No. CIV 12-3030-RAL, 2012 WL 5334737, at *2 (D.S.D. Oct. 26, 2012).

Johnson, Hubbel, and LaFleur contend that any harm is self-inflicted by Krebs through not properly certifying them to be on the ballot. In reality, under the state court order obtained by Lederman on behalf of the South Dakota Republican Party, Krebs was enjoined from certifying any CPSD candidate from appearing on the 2018 ballot. Docs. 25-3, 25-4, 25-5. Thus, it was the state court at the instigation of Lederman and the South Dakota Republican Party that inflicted the harm on CPSD, and not Krebs herself.[7] LaFleur in particular, but Johnson and Hubbel to some extent, suspect that Krebs, herself a Republican, did little to resist and may have welcomed the

---

[7]Some argument can be made that the CPSD members are responsible for self-inflicted harm through the dueling claims to chairmanship and the multiple conventions resulting in conflicting slates of gubernatorial nominees.

14

South Dakota Republican Party's efforts to block CPSD candidates from the ballot. LaFleur of course believes that the South Dakota Republican Party has infiltrated the CPSD to destroy it, and indeed the CPSD would seem to compete with the Republican Party for what some may view as far-right voters. However, two facts seem to dispel the conspiracy theories: 1) Krebs had a serious of quite informal text messages with Hubbel, Doc. 29-1 at 32–35, where Krebs was evidently trying to be helpful to the CPSD (or at least its Hubbel/Bergan faction) in providing information from her office in July of 2018; and 2) the South Dakota Republican Party did not target just the CPSD in trying to keep its candidates off the ballot, but took similar action against the Libertarian Party and Democratic Party in South Dakota. It is true that Krebs received a copy of the summons and complaint in this case weeks before Plaintiffs properly served the Attorney General, but Krebs's decision not to waive service and respond earlier was within her rights as a litigant, despite unfortunately pushing the time when this Court could conduct a hearing on the preliminary injunction motion to after absentee voting began.

The third Dataphase factor is the probability of success on the merits. Johnson, Hubbel, and LaFleur appear to have little likelihood of success on the merits based on the present record. To challenge not being included on an election ballot, a plaintiff must have standing; "if a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition." Constitution Party of S.D. v. Nelson, 730 F. Supp. 2d 992, 998–99 (D.S.D. 2010), aff'd in part 639 F.3d 417 (8th Cir. 2011) (quoting Pucket v. Hot Springs Sch. Dist., 526 F.3d 1151, 1161 (8th Cir. 2008)); see also, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (requiring standing to sue in federal case). In Nelson, for instance, this Court determined that certain CPSD candidates lacked standing by not

complying with South Dakota statutes regarding collecting signatures on their petitions, and the Eighth Circuit on appeal took an even more restrictive view of standing in determining that none of the CPSD candidates who were plaintiffs in the case had standing due to their non-compliance with South Dakota statutes. Either Hubbel or LaFleur or both failed to comply with the requisite statutory preconditions for ballot access and thereby lack standing; there is no way the CPSD can have two candidates for governor on the same general election ballot so one if not both failed to comply with the preconditions for ballot access. If Judge DeVaney is correct in her determination that neither of the CPSD slate of candidates was in compliance with the statutory preconditions to be on the November 2018 ballot, then Johnson, Hubbel, and LaFleur all lack standing.

Krebs raises two other arguments—application of the Rooker-Feldman doctrine and issue preclusion—as to why she is entitled to prevail in this case. "The Rooker-Feldman doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Four necessary elements for the Rooker-Feldman doctrine to apply are: "(1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district court proceedings commenced." Christ's Household of Faith v. Ramsey Cty., 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009); see Exxon Mobil, 544 U.S. at 284. Here the last three elements appear to be met with regard to Johnson, Hubbel, and LaFleur. However, as to the first element, neither Johnson nor Hubbel were parties to the state court case. The Rooker-Feldman doctrine generally does not bar claims unless the federal court plaintiff was a litigant in the prior state court case.

Lance v. Dennis, 546 U.S. 459, 465–66 (2006). By contrast with Johnson and Hubbel, LaFleur was a party to the state court case, intervening in the case, appearing personally at the seminal hearing on August 16, and now appealing from the order entered in that case. Doc. 25-6. Yet it could be premature to apply the Rooker-Feldman doctrine to even LaFleur's claim because the doctrine generally does not apply unless the state court case has ended, and LaFleur is appealing the state court ruling. Dornheim v. Sholes, 430 F.3d 919, 923–24 (8th Cir. 2005). The Rooker-Feldman doctrine may bar LaFleur's claim depending on the outcome of his appeal, but does not bar Johnson or Hubbel's claims.

Krebs next argues that issue preclusion bars these claims. A federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the laws of the State in which the judgment was rendered." In re Athens/Alpha Gas Corp., 715 F.3d 230, 235 (8th Cir. 2013) (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also 28 U.S.C. § 1738 (full faith and credit statute regarding state court judgments). Judge DeVaney has entered orders enjoining Krebs from having CPSD candidates on the 2018 general election ballot and evidently explained her decision during the August 16, 2018 hearing. No transcript of that hearing exists, so this Court does not have a full understanding of Judge DeVaney's reasoning or rulings, although she evidently found that neither faction of the CPSD had satisfied South Dakota law for ballot access through party convention vote. This Court of course does not sit as the appellate court to the Sixth Judicial Circuit to review and either affirm or reverse what Judge DeVaney has decided. Indeed, it would be unseemly under the federalism system of this country for a federal district court to do so, and principles of issue preclusion, full faith and credit, and comity generally result in deference to state court rulings, particularly on issues of interpretation and application of state statutes. See generally Simmons v. O'Brien, 77

F.3d 1093, 1095–96 (8th Cir. 1996). Johnson, Hubbel, and LaFleur have made no argument about any particular statute being unconstitutional to result in their exclusion from the ballot.

Another obstacle Johnson, Hubbel, and LaFleur face to prevailing on the merits is that resolution of which CPSD faction's candidates belong on the ballot presents a nonjusticiable question involving the internal management of a political party. The Supreme Court of the United States has recognized that a dispute over political party governance generally "is not for the courts to mediate" absent some issue of constitutional dimension. Democratic Party v. Wisconsin, 450 U.S. 107, 123–24 & n.25 (1981); see also Reform Party of Minn. v. Reform Party of U.S., No. 99 Civ. 2052 DDA/FLN, 1999 WL 1285798, at *2 (D. Minn. Dec. 29, 1999). To grant Johnson and Hubbel, or alternatively LaFleur, an injunction or declaration of rightful entitlement to being listed as candidates on the 2018 South Dakota general election ballot necessarily would require this Court to adjudicate which CPSD faction rightfully nominated candidates, which typically is the sort of questions deemed "not for the courts to mediate." Democratic Party, 450 U.S. at 123. In short, at this point the likelihood of Johnson, Hubbel, or LaFleur succeeding on the merits appears remote.

The fourth and final factor under the Dataphase analysis is the public interest. The public interest weighs in favor of denying injunctive relief here. Certainly, the public has an interest in choices among candidates for public office, and the high percentage of voters registered as independent in South Dakota and nationally suggests a strong public interest in candidate choices who are not affiliated with either major national party. However, there does not seem to be a strong public interest in the CPSD candidates on the 2018 ballot when considering that only about thirty people attended the CPSD convention noticed by Hubbel, that only five people attended the CPSD convention noticed by Stacey, and that the CPSD is torn apart by infighting and confusion

over who is chairman and who are authorized candidates. There is a compelling public interest in having an orderly election process and having all voting South Dakotans use similar ballots listing the same candidates for Governor and Representative to the U.S. House of Representatives, rather than having absentee voting disrupted and varying ballots depending on when possibly South Dakota could have the outside vendor reprint ballots with Johnson and Hubbel or LaFleur's names included. There also is a compelling public interest in expecting compliance with those election laws and ballot access statutes within South Dakota that are constitutional. As the Supreme Court of the United States has recognized, there is an "important state interest" in requiring compliance with requirements set by a state to show "a significant modicum of support before printing the name of a political organization's candidate on the ballot" as a way of "avoiding confusion, deception, and even frustration of the democratic process at the general election." Jenness v. Fortson, 403 U.S. 431, 442 (1971). The public interest favors allowing absentee voting to continue and for the ballots to remain as they are presently printed.

## III. Conclusion

For the reasons explained above, it is hereby

ORDERED that LaFleur's Motion to Intervene, Doc. 31, is granted. It is further

ORDERED that the Request for Preliminary Injunction, Doc. 7, is denied.

DATED this 1st day of October, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE