UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| G. Matt Johnson, Pro Se and | ) | |
| Lora Hubbel, Pro Se | ) | Civ. 18-4108 |
| Plaintiff, | ) | |
| vs. | ) | INTERVENOR'S RESISTANCE OF |
| | ) | DEFENDANT'S RESPONSE TO |
| Shantel Krebs, in her official capacity as | ) | INTERVENOR'S MOTION FOR |
| Secretary of State for South Dakota, and | ) | SUMMARY JUDGMENT; TO |
| | ) | DEFENDANT'S RESPONSES TO |
| Marty Jackley, in his official capacity as | ) | MATERIAL FACTS; TO DEFENDANT'S |
| Attorney General of South Dakota, et al | ) | MOTION FOR PROTECTIVE ORDER |
| Defendant(s), | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Dr. Terry Lee LaFleur, in his official capacity | ) | |
| of candidate for Governor of the CPSD, | ) | |
| Intervenor. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMES NOW THE INTERVENOR,** Dr. Terry Lee LaFleur, and for his resistance of

defendant's responses to Intervenor's Motion for Summary Judgment; Intervenor's and

Defendant's Statement of Material Facts; and defendant's motion for protective order, the

Intervenor states the following:

1.       The Intervenor concedes to the standard of review as cited in *Estate of Johnson v.*

*Weber*, 785 F.3d 267, 271 (8th Cir. 2015) (citing FRCP § 56(a)).  See also SDCL 15-6-56(c).

2.       The Intervenor incorporates all of his previous arguments and exhibits as if set forth

here in Intervenor's response and resistance.

1.

3.        The Intervenor avers that application of the Rooker-Feldman Doctrine is yet another

unconstitutional case made law created to circumvent the Constitution of these United

States. The Rooker-Feldman Doctrine is the prodigy of generative cases decided six decades

apart, it rests innocuously enough on the proposition that Congress has conferred appellate

jurisdiction over state court judgments upon only one federal court, the Supreme Court of

the United States. See *Symposium, The Rooker-Feldman Doctrine Foreward, Rooker-*

*Feldman: Worth Only The Powder To Blow It Up? Thomas D. Rowe, Jr.*

However, under Article III § 1. [t]he judicial power of the United States shall be vested

in one supreme Court, and *in such inferior Courts as the **Congress** may from time to time*

*ordain and establish. . . .* and Article III § 2. *[t]he judicial power shall extend to all Cases, in*

*Law and Equity, arising under this Constitution. . .* this language strongly suggests that

appellate jurisdiction does in fact lie in the federal District Courts (i.e. Inferior Courts), both

in Law and Equity arising from a State court controversy. The United States Supreme Court

hears a fraction of the cases that may be decided on the State and "Inferior Court" levels.

The language in Article III irrefutably states *"and in such inferior Courts as the Congress*

*may from time to time ordain and establish."* This highly implicative language reserves to

Congress the sole authority to determine the functionality of the federal District Courts, and

it reserves to itself the sole authority to change the jurisdiction issue by legislation on

Capitol Hill. The judicial branch of our federal and state judiciaries have long been

legislating from the bench, and the Rooker-Feldman Doctrine is another example of over-

reaching on the part of the judiciary. *See District of Columbia Court of Appeals v. Feldman,*

2.

460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) *See* 28 U.S.C. § 1257 (1994) (conferring Supreme Court certiorari jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"); *cf., e.g.,* 28 U.S.C. § 1331 (1994) (authorizing original jurisdiction over federal-question actions); 28 U.S.C. 1332(a) (1994) (authorizing original jurisdiction over diversity and alienage actions).

4.　　In the *Lederman v. Krebs et al*, case, the state circuit court was merely going through the paces. That court's decision was pre-decided before the first argument was heard. Every piece of evidence that the Intervenor attempted to offer into evidence was rejected by the court. Every piece of evidence offered by the Petitioner (Dan Lederman) was admitted into the record.

　　Moreover, attorneys for the defendant claim that no evidence existed that could refute the courts findings at trial. This claim is patently untrue. First, Shantel Krebs lied on numerous occasions concerning certain documents in her possession and when she had them. One, Lori Stacey did in fact give substantial notice to Shantel Krebs that Lora Hubbel had in fact resigned. The Intervenor had at trial a copy of the email chain between Lori Stacey and Racheal Schmidt, one of Shantel's assistants. It was dated February 6, 2017. This was a self-authenticating document. The SDCL § 12-27-6 Statement of Organization was the historic document utilized by every Chairman of the CPSD since 2012. And all were acknowledged by Shantel Krebs, even Mike Gunn's 12-27-6 S.O.O. was received on August 9, 2018, but not filed by Shantel Krebs until August 21, 2018. Shantel sat on Mike's 12-27-6 Statement of Organization until after the hearing was held on August 16, 2018.

3.

Furthermore, Joel Bergan resigned automatically on July 17, 2018 as Vice-Chairman of the true Constitution Party of South Dakota. The same day, Lori Stacey appointed Mike Gunn as Vice-Chairman and noticed Shantel of the change. Joel Bergan called a secret meeting in Chamberlain, SD on July 21, 2018, wherein, Joel appointed Gordon Howie Vice-Chairman of the South Dakota Constitution Party (i.e. SDCP) and then Joel resigned again in writing. Shantel Krebs was fully aware of this secret meeting. This fact was pointed out to the state circuit judge, but she didn't want to hear anything about it.  *See Exh. "C."*

Now, Hubbel and Johnson claim that Shantel instructed them to not file the requisite SDCL § 12-27-6 Statement of Organization. The answer to the question that everyone should find interesting is: "if Shantel wasn't colluding with Hubbel & Company, then why, if Gordon Howie truly believed he was the legal Chairman of the Party, why didn't Gordon Howie file the 12-27-6 Statement of Organization? The answer is that Shantel told him not to file because she didn't want anything to interfere with the plan to find service of process in Joel Bergan. Lederman's attorney offered a copy of an email chain between Shantel Krebs and Kia Warnes (sic) indicating that a search of Shantel's records could find no one other than Joel Bergan as being the Chairman of the CPSD Central Committee. Another lie. In the email chains between Lori Stacey and Rachael Schmidt, the identical type of documentary evidence offered by Mr. Bell, clearly showed that Krebs received and filed Lori Stacey's 12-27-6 filing on February 6, 2017 and not on July 12, 2018 as now claimed.

Letters of resignation are not required to be filed with the Secretary of State's Office. Notice typically is accomplished with the 12-27-6 Statement of Organization update.

4.

The Intervenor has served Requests for Production of Documents in order to find the answers here. The attorneys for the defendant have sent this Intervenor on a wild goose chase. Ms. Bailey cited SDCL §§ 12-5 24, 12-5 14, 12-5-3 as where to find the proper document to give Shantel notice of changes to the State Central Committee of the CPSD. SDCL 12-5-24 has been repealed, and 12-5-3 has also been repealed, neither statute has the requisite form requested. SDCL 12-5-14 also has no form requisite to giving proper notice to Krebs. The SDCL Codes state that the Secretary of State must promulgate the requisite forms needed to substantially comply with state campaign and election laws. It appears that no form exists, and if none exists, then no notice can be provided to the Secretary of State at all. Upon a cursory reading of SDCL § 12-5-14 in the last line it appears to suggest a mere letter will suffice giving the Secretary of State such notice. Does notice in an email count as a writing? Intervenor avers it does.

5.    The attorneys for defendant claim that issue preclusion applies to the facts of this case. However, the Supreme Court did not get to the merits of the case here. The South Dakota Supreme Court's Chief Justice ruled that the case should be dismissed on, interestingly ironic grounds, of insufficient service of process. This argument was also false in that the Intervenor in Civ. 18-147 had cured the deficiency of service issue by hiring a disinterested third party to effect service of process. A fact made known to the clerk for the Supreme Court by affidavit of Rene Meyer's. The Intervenor also filed a T.R.O. by Affidavit without notice, following SDCL Codified Law. Intervenor was waiting patiently for the Court to set a hearing date typically in ten days. Intervenor had also drafted a Motion for Preliminary

5.

Injunction and was prepared to serve the parties at the hearing on the T.R.O., but the Court never set the hearing. Intervenor also filed a Cease and Desist Order, with the Order attached, but to no avail. Then suddenly on or about September 27, 2018, over two months later, Intervenor gets served via US Mail that his "Notice of Appeal" was being dismissed on September 17, 2018 on insufficient service of process grounds, and his case was now "Moot."

6.          In *Paul Hasse, d/b/a Coyote v. Fraternal Order of Eagles #2421 of Vermillion, SD* 2003 SD 23, the South Dakota Supreme Court decided the issue of "[w]hether a party who acts upon a court order that is subsequently reversed on appeal, must compensate the other party for losses sustained as a result of the enforcement of the erroneous order."

In *Hasse* (cite omitted) the Court then asked, "what are the consequence of acting on a judgment that is subsequently reversed on appeal[?]" Focusing on the relevant rules of appellate procedure, it is well-established that a "judgment reversed by a higher court is 'without any validity, force or effect and ought never to have existed.'" . . . "[t]o 'reverse' a judgment means to 'overthrow, vacate, set aside, make void, annul, repeal, or revoke it. . .'" "the mandate of this court ordering a reversal of a judgment without other direction nullifies the judgment, findings of facts, and conclusions of law, and leaves the case standing as if no judgment or decree had ever been entered." *See Gluscic v. Avera St. Lukes*, 2002 SD 93, ¶¶17, 20, 649 N.W. 2d 916, 920 (internal citations omitted).

Reversal of the state circuit court's judgment leaves the case standing as if the judgment had never been entered, the law requires an obligation on the part of the party

6.

who received benefits from enforcement to restore those benefits to the adverse party.

7.        The attorneys for defendant are good at scathing the record to determine a
favorable outcome in their case. The Lederman letter to Shantel Krebs demanded that
no candidates from the **SDCP** Convention be certified to the November Ballot. No such
Party exists in South Dakota. This has subsequently been expanded to include the
candidates from the CPSD Convention, but only after the Intervenor pointed this fact
out to the Hughes County Court Clerk in Pierre, South Dakota prior to the hearing.

8.        The attorney's for defendant argues that Intervenor's case is barred by res
judicata and collateral estoppel. However, the Intervenor only intervened in the Civ 18-
147 case for two reasons: 1. Who is the legal chairman of the CPSD?; 2. Did the
petitioner have service of process over the respondent CPSD? The state circuit court
was obviously not going to hear any evidence that would remotely suggest the truth in
this case. We asked for a continuance but that was denied. We asked for the right to
subpoena witnesses, but were denied. Ms. Kia Warnes was subpoenaed to testify, but
we did not receive adequate notice until August 17, 2018.

9.        The state court's final decision was a mere rubber stamp on the illegal
proceedings to circumvent the previous federal court order issued by federal District
Court Judge Karen Schreier.  As a result of the February 2018 judgment the State of
South Dakota and the Secretary of State was ordered to allow third party candidates to
have access in both statewide and local elections. Right out of the gate, Shantel Krebs

7.

misinterpreted the Court's order and stopped local candidates from participating in all local elections in South Dakota. This issue will be revisited by the ACLU Attorney in the near future.

10.        Then on July 12, 2018 Dan Lederman, Shantel Krebs, and Gordon Howie shifted to plan "B." Plan "B" was to recruit failed Republican Primary candidates to infiltrate the CPSD Party and interfere with the normal functions of our Statewide Convention legally called by Lori Stacey and recognized by Krebs.

11.        Ms. Hubbel resigned in writing on February 2, 2017 as evidenced by the email exchange between Lori Stacey and Rachael Schmidt in the Secretary of States Office. Lori Stacey further provided notice via a SDCL § 12-27-6 Statement of Organization, as well as a writing within an email to Rachael Schmidt. This email substantially complies with SDCL § 12-5-14 noticing Krebs of the changes to the State Central Committee for the CPSD.   See Exh. "A"

12.        On July 12, 2018 the defendant, the plaintiff's, Dan Lederman and Gordon Howie conspired to hijack the CPSD Convention. After these co-conspirators discovered they could not stop our convention from occurring, Ms. Hubbel was communicating with Krebs via cell phone at the Convention. It was then that Krebs told Ms. Hubbel to replace Joel Bergan as Chairman of the Convention, and move to nominate Gordon Howie as his replacement at the Convention. After this was done illegally, Howie suspended the Convention, thus affectively stopping the CPSD from certifying our

8.

nominated statewide candidates.  Several documents were negligently abandoned at the Legion Hall by Ms. Hubbel.  We would not have known who was involved in this coup attempt had it not been for Ms. Hubbel's negligence.

13.     Prior to the Convention, Ms. Hubbel authored a plan to remove James Bialota from the convention, as evidenced by one of the documents abandoned by Ms. Hubbel at the Legion Hall.  Half-way through the Convention, after James tried to vet Ms. Hubbel's voter registration status, Ms. Hubbel executed that plan by trying to have James removed for alleged disruptiveness.  This plan failed.

14.     After this plan failed, Gordon Howie was illegally nominated Chairman of the Convention and he suspended the Convention.  There were 6 illegal delegates all sent in by Dan Lederman, Shantel Krebs and Gordon Howie to hijack the CPSD Convention and we now have proof of these facts.

15.     The attorneys for the defendant claim that Lori Stacey did not substantially comply with State Law in giving notice to Krebs concerning the second calling of our Statewide Convention on August 14, 2018.  This assertion is also without merit.  The 30-day notice requirement does not say that the Secretary of State's office must be open for business, it merely states that no less than 30 calendar days is required to give notice.  July 15, 2018 is in fact thirty-one calendar days out from August 14, 2018, wherefore, Ms. Stacey is in actual compliance with South Dakota election laws.

9.

16.     Previously, the attorneys for the defendant have falsely claimed that Ms. Stacey was not in substantial compliance with the publication requirements of calling a statewide Convention. This too is a false assertion as evidenced by the Affidavit from the Argus Leader clearly showing that Ms. Stacey actually complied, if not substantially complied with publication requirements. See Exh. "B."

17.     Justin L. Bell, attorney for Dan Lederman and the Republican Party of South Dakota failed to advise the Intervenor and perhaps the state circuit court, that Mr. Bell had a huge conflict of interest. Mr. Bell was attorney of record for Dan Lederman and at the same time a sitting member of the Republican Party of South Dakota Central Committee, as Treasurer thereof. Notice of this conflict minimally is required by State Law, subject to objection by the interested parties. If Mr. Bell received compensation from Dan Lederman for his legal services, Mr. Bell has other matters to answer for.

18.     The truth of what Dan Lederman and the Republican Party of South Dakota have done will inevitably come to the light of day. If not in this case, it may very well come to light in Civ. 18-4125-RAL. We have irrefutable fact evidence and testimonial evidence that will blow this scandal wide open. We know how they did it, why they did it, and who was involved from start to finish. Dismissing this case will not stop the truth from being known by everyone in South Dakota and beyond. This rabbit whole may go to Kristi Noem's doorstep because evidence in these scandals always finds a way of getting out.

10.

**WHEREFORE:**

        The Intervenor herein resists any attempt to dismiss this case;

        The Intervenor herein resists any attempt to stall discovery in this case;

        The Intervenor herein resists any attempt to sweep this scandal under South Dakota's politically correct rug.

        The Intervenor respectfully requests that his discovery requests be granted and herein respectfully requests the Court compel defendant and plaintiffs to answer Intervenor's Requests for Production of Documents and Requests for Admissions which have been proffered in Good Faith and are not designed to harass or cause hardships on the interested parties herein.

        The intervenor respectfully requests this Court deny defendant's motion for a Protective Order.

        The Intervenor respectfully requests a hearing to address these issues before this Court.

        The Intervenor respectfully requests costs be shouldered by each party herein respectively.

Respectfully Submitted,

Dr. Terry Lee LaFleur
4601 E. Clark St. Apt. 8
Sioux Falls, SD 57110
Attorney Pro Se
(605) 413-0274

Copy To:

| Marty Jackley | Shantel Krebs | Lora Hubbel | Matt Johnson |
|---|---|---|---|
| 1302 E. Hwy 14Ste.1 | 500 E. Capital | 4605 W. Graceland Ct. | 204 S 7th Ave. |
| Pierre, SD 57501 | Pierre, SD 57501 | Sioux Falls, SD 57106 | Brandon, SD 57005 |

The undersigned certifies that a true copy of the foregoing was mailed U.S. postage prepaid to each party or their attorney at their last known address on this 5TH day of December 2018.

11.

Feb 2, 2017

From: Lora Hubbel, Past Chair of Constitution Party

RE: Vice Chair to receive Chair duties

To South Dakota Constitution Party Board Members:

I, Lora Hubbel, resign my chairmanship and wish to announce to those concerned that Vice Chair, Joel Bergan is next in line to serve in the Chair position,

Sincerely,

Lora Hubbel

Lora Hubbel, 605-521-9504,

Great American Homes

510 W 24th St, Ste 2, Sioux Falls, SD 57106

| CUSTOMER NUMBER: | 6054003568 | **Argus Leader** | |
|---|---|---|---|
| INVOICE NUMBER: | 3067153 | P.O. Box 677349, Dallas, TX 75267-7349 | |
| RUN DATES: | 7/31, 2018 | | AMOUNT DUE: $24.16 pd. |

A

CONSTITUTION PARTY OF SOUTH DAKOTA
C/O MIKE GUNN
5905 PARAKEET PLACE
SIOUX FALLS, SD 57107

---

AFFIDAVIT OF PUBLICATION-
Customer Number:      6054003568
Invoice Number:        3067153

## Argus Leader
# AFFIDAVIT OF PUBLICATION

---

### STATE OF SOUTH DAKOTA

### COUNTY OF MINNEHAHA } ss

Sara Kruse being duly sworn, says: That The **Argus Leader** is, and during all the times hereinafter mentioned was, a daily legal newspaper as defined by SDCL 17-2-2.1, as amended published at Sioux Falls, Minnehaha County, South Dakota; that affiant is and during all of said times, was an employee of the publisher of such newspaper and has personal knowledge of the facts stated in this affidavit; that the notice, order or advertisement, a printed copy of which is hereto attached, was published in said newspaper upon

| Tuesday | , the | 31 | day of | July | 2018 . |
|---|---|---|---|---|---|
| | , the | | day of | | 2018 . |
| | , the | | day of | | 2018 , |
| | , the | | day of | | 2018 , |
| | , the | | day of | | 2018 , |
| | , the | | day of | | 2018 . |

and that     $24.16 pd.     was charged for publishing the same.

*Sara Kruse*

Subscribed and sworn to before me        7/31/18

*Betty Gates*

Notary Public, South Dakota

My Commission expires March 11, 2022

Notice of Second State Convention of the Constitution Party of South Dakota
All CP members and the public are invited to attend. It will be held on August 14, 2018 at the Governor's Inn, 700 W. Sioux Avenue in Pierre starting at 11:00am. There is no charge to attend. RSVP should be sent to info@constitutionpartysd.org
All those disrupting the first state convention will not be allowed to attend. Anyone attempting disruption of official party business will be promptly escorted out of convention.
Paid for by Constitution Party of South Dakota. Not authorized by any candidate or candidate Committee.
3067153        July 31, 2018

Exh. "B"



BETTY GATES
SEAL  NOTARY PUBLIC  SEAL
SOUTH DAKOTA



