UNITED STATE DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| Matt Johnson, and | ) | |
| Lora Hubbel, | ) | 18-4108 |
| Plaintiffs, | ) | |
| and | ) | Intervenor's Resistance To |
| | ) | Defendant's Motion To Dismiss |
| Terry Lee LaFleur, | ) | |
| Intervenor, | ) | |
| vs. | ) | |
| Steven Barnett, in his official capacity as | ) | |
| Secretary of State, | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMES NOW, THE INTERVENOR**, Dr. Terry Lee LaFleur, Attorney Pro Se, and for his Brief

in Support of his Resistance to defendant(s) motion to dismiss, and in accordance with Article III

of the Federal Constitution states the following:

**BACKGROUND**

Plaintiff incorporates the facts set forth in his Complaint dated 09/27/2018. And as set

forth in his Briefs filed in this case, as if set forth fully herein.

1.

## DISCUSSION

The Plaintiff resists the defendant's motion to dismiss this Article III cause of action because the acts or omissions of the plaintiffs Hubbel and Johnson and the defendant(s) have resulted in numerous violations of the Plaintiff's fundamental Rights and Privileges as a citizen and as a registered voter here in South Dakota. *See* Libertarian Party of South Dakota et al v. State of South Dakota and Shantel Krebs et al, (2018).

In accordance with Article III § (1) The judicial power of the United States shall be vested in one supreme court, and in such inferior Courts as the Congress may from time to time ordain and establish. Congress receives authority to repeal the Constitution from the Constitution.

Here, the Forefathers intended Congress to possess the powers to decide what constitutes subject matter jurisdiction for the inferior courts; and that power shall remain in the hands of Congress to so decide. The Rooker Feldman Doctrine was created by two cases more than 6 decades apart. Therefore, the Rooker Feldman Doctrine is unconstitutional.

Supreme Court Review of State Court Decisions. -- In addition to the constitutional issues presented by the Judiciary Act of 1789 and subsequent enactments, questions have continued to arise concerning review of state court judgments which go directly to the nature and extent of the Supreme Court's appellate jurisdiction. Because of the sensitivity of federal-state relations and the delicate nature of the matters presented in litigation touching upon them, jurisdiction to review decisions of a state court is dependent in its exercise not only upon ascertainment of the existence of a federal question but upon a showing of exhaustion of

2.

state remedies and of the finality of the state judgment. Because the application of these standards to concrete facts is neither mechanical nor nondiscretionary, the Justices have often been divided whether these requisites to the exercise of jurisdiction have been met in specific cases submitted for review by the Court.

Inasmuch, the Plaintiff had asserted two defensive issues at the state Circuit Court level: (1) Who is the legal Chairman of the Constitutional Party of South Dakota (i.e. CPSD)?; (2) Did the Circuit Court have Proper Service of Process over the CPSD in order to even have a hearing or a trial? These issues involve Due Process and Equal Protection claims. Judge DeVaney erroneously found service of process in Joel Bergan, but never reach the issue of "Who was the legal Chairman of the CPSD?" But remember, this was not a case about the truth, it was a case about keeping the CPSD off the November Ballot. The Republican Party, the Republican Circuit Judge and the Republican State Supreme Court did not want any additional candidates taking votes away from their handpicked candidate Kristi Noem.

Immediately upon the Court's erroneous decision finding service of process in Joel Bergan, the Intervenor informed the court that he was leaving and that no other issues would be binding upon him. The CPSD was not even represented at this farce of a hearing. Defendant Shantel Krebs instructed other co-conspirators to stay away from the hearing. Shantel Krebs didn't even appear herself. We were led to believe this was a preliminary hearing, not a full-blown adjudication or trial. These two issues and others were preserved for appeal to the State Supreme Court by way of the Intervenor's timely objections on August 16, 2018.

3.

A proper Notice of Appeal was filed before the State Supreme Court by August 21, 2018. An Affidavit was also filed by the Appellant as proof of Service of Process on the Appellees. See Civ. #28701.

Furthermore, in accordance with SDCL § 15-24-3(3) the Appellant's Notice of Appeal should have been given high priority because of the impact on the general elections scheduled in less than three months. The Supreme Court completely ignored the TRO by Affidavit w/o notice, the Cease and Desist Order, and the Affidavit of Proof of Service by Rene Meyer's.

Additionally, the Circuit court did not decide any issues other than the issue of proper service of process. This issue was replete with problems of which the court refused to even allow pursuit thereof. We raised several fact issues with the court, including the fact that Joel Bergan had officially resigned from both committees at the time his wife Paula had been served in Arlington, SD on August 1, 2018. See SDCL § 15-6-17(a) Real Party of Interest.

Moreover, the Kingsbury County Sheriff's return of service left many fact questions unanswered. First, the original Writ of Prohibition allegedly served upon Paula Bergan did not name the CPSD as a Respondent to the legal action brought by Dan Lederman. (See Exh. A). Second, the date of the return of Service was July 2, 2018 a month before the Writ was even filed by Lederman. Thirdly, Joel Bergan denies to this day that he was even served at all with this Writ of Prohibition. No person, corporation or political committee member can be a real party in any lawsuit without actual knowledge of the litigation so brought. Because the CPSD was not added as a Respondent until August 3, 2018 it is extremely likely that criminal

4.

conspiracy was afoot here in this illegal action to prevent the CPSD from getting their legally nominated and elected candidates on the November Ballot by Shantel Krebs, Dan Lederman, Lora Hubbel, Marty Jackley, and even Ann Mines Bailey. Thanks to Hubbel's answer to my federal lawsuit (i.e. 18-4125), and her Response to Mr. Barnett's motion to dismiss, we now know that Jackley and Ms. Bailey are also involved in the coup d'état and they may all be factually guilty of Conspiracy in this case. (See Exh. B - Joel Bergan's letter of resignation).

## POWER OF CONGRESS TO CONTROL THE FEDERAL COURTS

Under Article III, [t]he Court is empowered to review the judgments of the highest court of a State in which a decision could be had. This will ordinarily be the State's court of last resort. It must be subject to no further review or correction in any other state tribunal; it must also be final as an effective determination of the litigation and not of merely interlocutory or intermediate steps therein. It must be the final word of a final court. The object of this rule is to avoid piecemeal interference with state court proceedings; it promotes harmony by preventing federal assumption of a role in a controversy until the state court efforts are finally resolved. For similar reasons, the Court requires that a party seeking to litigate a federal constitutional issue on appeal of a state court judgment must have raised that issue with sufficient precision to have enabled the state court to have considered it and you must have raised the issue at the appropriate time below.

Here, as stated above, the Intervenor timely raised the two issues above, both in the informal preliminary hearing in state Circuit court, and in his timely Notice of Appeal filed with

5.

the State Supreme Court.

Unlike its original jurisdiction, the appellate jurisdiction of the Supreme Court is subject to "exceptions and regulations" prescribed by Congress, and the jurisdiction of the inferior federal courts is subject to congressional prescription. Additionally, Congress has power to regulate modes and practices of proceeding on the part of the inferior federal courts. Whether there are limitations to the exercise of these congressional powers, and what the limitations may be, are matters that have vexed scholarly and judicial interpretation over the years, inasmuch as congressional displeasure with judicial decisions has sometimes led to successful efforts to "curb" the courts and more frequently to proposed but unsuccessful curbs. Supreme Court holdings establish clearly the breadth of congressional power, and numerous dicta assert an even broader power, but that Congress may through the exercise of its powers vitiate and overturn constitutional decisions and restrain the exercise of constitutional rights by exercising Congresses right to repeal the Constitution.

**Appellate Jurisdiction**. -- In Wiscart v. D'Auchy, (cite omitted) the issue was whether the statutory authorization for the Supreme Court to review on writ of error circuit court decisions in "civil actions" gave it power to review admiralty cases. A majority of the Court decided that admiralty cases were "civil actions" and thus reviewable; in the course of decision, it was said that "[i]f Congress had provided no rule to regulate our proceedings, we cannot exercise an appellate jurisdiction; and if the rule is provided, we cannot depart from it."

6.

Much the same thought was soon to be expressed by Chief Justice Marshall, although he seems to have felt that in the absence of congressional authorization, the Court's appellate jurisdiction would have been measured by the constitutional grant. "Had the judicial act created the supreme court, without defining or limiting its jurisdiction, it must have been considered as possessing all the jurisdiction which the constitution assigns to it. The legislature would have exercised the power it possessed of creating a supreme court, as ordained by the constitution; and in omitting to exercise the right of excepting from its constitutional powers, would have necessarily left those powers undiminished." (Cite omitted).

However, the appellate powers of Supreme Court are not given by the judicial act. They are given by the Constitution. But they are limited and regulated by the judicial act, and by such other acts as have been passed on the subject. Accordingly, the constitution of the United States, it was said in one opinion, "the Supreme Court possesses no appellate power in any case, unless conferred upon it by act of Congress." In order for a case to come within its appellate jurisdiction, the Court has said, "two things must concur: the Constitution must give the capacity to take it, and an act of Congress must supply the requisite authority." Moreover, it is for Congress to determine how far, within the limits of the capacity of this court to take, appellate jurisdiction shall be given, and when conferred, it can be exercised only to the extent and in the manner prescribed by law. In these respects, it is wholly the creature of legislation.

This congressional power, conferred by the language of Article III, Sec. 2, cl. 2, which provides that all jurisdiction not original is to be appellate, "with such Exceptions, and under

7.

such Regulations as the Congress shall make," has been utilized to forestall a decision which the congressional majority assumed would be adverse to its course of action. The Supreme Court is not at liberty to inquire into the motives of the legislature. They can only examine into its power under the Constitution; and the power to make exceptions to the appellate jurisdiction of this court is given by express words to Congress, not to legal scholars and attorneys.

Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause, and this principle there applied has been similarly affirmed and applied in later cases. (Cites omitted).

**Jurisdiction of the Inferior Federal Courts**. -- The Framers, as we have seen, divided with regard to the necessity of courts inferior to the Supreme Court, simply authorized Congress to create such courts, in which, then, judicial power "shall be vested" and to which nine classes of cases and controversies "shall extend." While Justice Story deemed it imperative of Congress to create inferior federal courts and, when they had been created, to vest them with all the jurisdiction they were capable of receiving, the First Congress acted upon a wholly different theory. Inferior courts were created, but jurisdiction generally over cases involving the Constitution, laws, and treaties of the United States was not given them, diversity jurisdiction was limited by a minimal jurisdictional amount requirement and by a prohibition on creation of diversity through assignments, equity jurisdiction was limited to those cases where a "plain, adequate, and complete remedy" could not be had at law. This care for detail in

8.

conferring jurisdiction upon the inferior federal courts raised a conviction by Members of Congress that it was within their power to confer or to withhold jurisdiction at their discretion. The cases have generally sustained this view.

Thus, in Turner v. Bank of North America, (cite omitted) the issue was the jurisdiction of the federal courts in a suit to recover on a promissory note between two citizens of the same State but in which the note had been assigned to a citizen of a second State so that suit could be brought in federal court under its diversity jurisdiction, a course of action prohibited by Sec. 11 of the Judiciary Act of 1789. Counsel for the bank argued that the grant of judicial power by the Constitution was a direct grant of jurisdiction, provoking from Chief Justice Ellsworth a considered doubt and from Justice Chase a firm rejection. The notion has frequently been entertained, that the federal courts derive their judicial power immediately from the constitution: but the political truth is, that the disposal of the judicial power (except in a few specified instances) belongs to Congress. If Congress has given the power to this Court, we possess it, not otherwise: and if Congress has not given the power to us, or to any other Court, it still remains at the legislative disposal. Besides, Congress is not bound, and it would, perhaps, be inexpedient, to enlarge the jurisdiction of the federal courts, to every subject, in every form, which the constitution might warrant. Inasmuch, Congress reserved the right vested in them by the Constitution to determine for themselves what the inferior courts jurisdiction will be, not the Rooker Feldman Doctrine.

Chief Justice Marshall himself soon made similar assertions, and the early decisions of

the Court continued to be sprinkled with assumptions that the power of Congress to create

inferior federal courts necessarily implied "the power to limit jurisdiction of those Courts to

particular objects." In Cary v. Curtis, (cite omitted) a statute making final the decision of the

Secretary of the Treasury in certain tax disputes was challenged as an unconstitutional

deprivation of the judicial power of the courts. The Court decided otherwise. [T]he judicial

power of the United States, although it has its origin in the Constitution, is (except in

enumerated instances applicable exclusively to this court), dependent for its distribution and

organization, and for the modes of its exercise, entirely upon the action of Congress, who

possess the sole power of creating tribunals (inferior to the Supreme Court), for the exercise of

the judicial power, and of investing them with jurisdiction either limited, concurrent, or

exclusive, and of withholding jurisdiction from them in the exact degrees and character which

to Congress may seem proper for the public good.  Five years later, the validity of the assignee

clause of the Judiciary Act of 1789 was placed in issue in Sheldon v. Sill, (cite omitted) in which

diversity of citizenship had been created by assignment of a negotiable instrument. It was

argued that inasmuch as the right of a citizen of any State to sue citizens of another flowed

directly from Article III, Congress could not restrict that right. Unanimously, the Court rejected

these contentions and held that because the Constitution did not create inferior federal courts

but rather authorized Congress to create them, Congress was also empowered to define their

jurisdiction and to withhold jurisdiction of any of the enumerated cases and controversies in

Article III. The case and the principle have been cited and reaffirmed numerous times and has

been quite recently applied.

10.

Inasmuch, the Rooker Feldman Doctrine, a prodigy of two cases decided six decades apart resulted in the Feldman Doctrine, a case made doctrine, that clearly violates the authority reserved to Congress as granted in the Constitution.

However, in Civ 18-147 the State Supreme Court did not even get to the merits of the case when it granted the cover-up request for dismissal by Marty Jackley, the South Dakota Attorney General. The Court dismissed my Notice of Appeal citing: (1) lack of proper service of process, which is ironically funny because that was one of the Intervenor's arguments in state Circuit court; (2) that the Appellant's case was Moot.

However, the 18-147 case was in fact not Moot. According the definition below that's simply not true:

> Law: Moot: a. Not presenting an open legal question, as a result of the occurrence of some event definitively resolving the issue, or the absence of a genuine case or controversy.  B. Of no legal significance; hypothetical. Tr.v. moot·ed, moot·ing, moots

Many issues still existed for review by the state Supreme Court.  Did the Circuit Court Judge commit judicial error in finding service of process in Joel Bergan?  Did the trial Court commit judicial error in not deciding who the legal Chairman of the CPSD truly is?  Did the trial Court commit judicial error in the questionable acts or omissions by the Republican Party and the Kingsbury County Sheriff in the service of process conspiracy?  Did the Circuit court commit judicial error in even hearing the Writ of Prohibition case in the first place?  As Hubbel claims.

In Paul Hasse, d/b/a Coyote v. Fraternal Order of Eagles #2421 of Vermillion, SD 2000 SD 139, 618 N.W.2d. 735 (Eagles 1), the Court held that because a reversal leaves the case standing

as if no judgment had been entered, the prevailing party at trial incurs liability for restitution to the opposing party if the former executes on a judgment that is reversed on appeal. This authority makes clear that one who executes on a judgment during the pendency of an appeal of the judgment does so at his own risk. If [that party] obtains benefits from the execution and the judgment is subsequently reversed, those benefits must then be restored to the adverse party. See Aune v. B-Y Water District, 505 NW2d, 761, 764 (SD 1993). See also Gluscic, 2002 SD ¶21, 649 NW2d at 920; Wasserburger v. Consolidation Management Corp., 502 NW2d 256, 260 (SD 1993); Janssen v. Tusha, 297 NW 119, 120 (SD 1941); Pendergast v. Muns, 238 NW 344, 347 (SD 1931). This is a SD Supreme Court decision that the Court didn't follow.

Here, the Intervenor's Due Process Rights have not only been violated but have been totally deprived by judicial error of a Circuit court judge, and also by a highly prejudicial State Supreme Court's politicized decision denying the Intervenor's Right of Appeal on Due Process and Equal Protection grounds.

The first question "Due Process" may be raised by several factual situations. A state court may have based its decision on two grounds, one federal, one nonfederal. Both federal and nonfederal grounds may have been raised but the state court judgment is ambiguous or is without written opinion stating the ground relied on.

Inasmuch, it's exactly the problem we have in our state Circuit court case 18-147. The Circuit court judge failed to write a legal opinion at all in this case. We did not stipulate that Judge DeVaney didn't have to. No agreement was even discussed about whether or not

12.

she needed to.  Judge DeVaney didn't want any writing remotely indicating that she didn't have

the authority to issue a permanent Writ of Prohibition (e.g. Peremptory Writ of Prohibition).

This case is a case of First Impression here in South Dakota.

In accordance with SDCL § 15-6-52(a).  Effect of findings by the court—Proposals—

When unnecessary.  In all actions tried upon the facts without a jury or with an advisory jury,

the court shall, unless waived as provided in § 15-6-52(b), find the facts specially and state

separately its conclusions of law therein. . . .  No such stipulation was entered into effectively

waiving Judge DeVaney's judicial duty to write a legal opinion addressing the findings of facts

and conclusions of law under 15-6-17(b).  No default was entered as against the Intervenor

because he showed up for the hearing.  A statement of facts and conclusion of law was neither

written or given orally after the hearing.  Judge DeVaney just entered a judgment for the

Republican Party, which is what they intended to do all along.  In their rush to judgment, the

CPSD and the Intervenor's Due Process and Equal Protection Rights were steamrolled by the

Circuit court judge and the Republican Party.  The Intervenor's Due Process and Equal

Protection Rights were stomped into the swamp known as corrupt politics in South Dakota.

Not only did the Intervenor raise such Constitutional issues, but we also asked the

Circuit court for a continuance in order to subpoena witnesses and mount an adequate

defense, which said requests where denied with impunity by Judge DeVaney.  This was not a

fair and/or an impartial adjudication on the merits.

13.

"The link between courts and the public is the written word.  With rare exceptions, it is through judicial opinions that courts communicate with litigants, lawyers, other courts, and the community.  Whatever the court's statutory and constitutional status, the written word, in the end, is the source and the measure of the court's authority. . .

It is therefore not enough that a decision be correct ---- it must also be fair and reasonable and readily understood.  The burden of the judicial opinion is to explain and to persuade and to satisfy the world that the decision is principled and sound.  What the court says, and how it says it, is as important as what the court decides.  It is important to the reader.  But it is also important to the author because in the writing lies the test of the thinking that underlies it.  "'Good writing, essentially is clear thinking made visible.'"  Ambrose Bierce, Write It Right 6 (rev. ed. 1986).

Res Judicata (e.g. Issue Preclusion) does not apply here because the civil case 18-147 was not adjudicated fully on the merits.  The Appeal #28701 likewise was not adjudicated fully on the merits either.  Since no collateral estoppel (e.g. claim preclusions) claims were adjudicated on the merits, no collateral estoppel applies to the facts in this case.

## ARTICLE III STANDING

Clearly the Plaintiffs Hubbel and Johnson do not have Article III Standing to bring this cause of action before this court.  However, the Intervenor does have Article III Standing because he showed up and tried to put on a good fight in the face of political and judicial corruption.

14.

In Libertarian Party of South Dakota et al vs. Shantel Krebs et al, (2018) this Court has stated numerous times that Article III Standing requires that "[the] plaintiff demonstrate an injury in fact that is fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable [and unbiased] judicial decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)."

Here, the acts or omissions on the part of the plaintiffs and defendant(s) clearly caused an injury in fact to the Intervenor that is fairly traceable to the challenged conduct of Ms. Shantel Krebs, as a Constitutionally elected Secretary of State for the State of South Dakota. A significant nexus exits here, because Shantel offered overt and covert encouragement to the other non-governmental actors and helped them to pull off the coup d'état of the Statewide Convention of the CPSD on July 14, 2018. Krebs even told Ms. Hubbel that her rights would be adequately protected by Ann Mines Bailey at the hearing, and that the Hubbel/Johnson Faction would persevere at trial. Hubbel claims that she and other defendants were told to stay away from the hearing. A claim that is supported by the fact evidence in this case.

## PRIVITY

The Intervenor had zero privity with the Respondents, he only appeared in his capacity as candidate for Governor. The CPSD was not represented by counsel at any material stage of the 18-147 hearing. And Joel Bergan never had actual knowledge of the lawsuit. He couldn't have actual knowledge because the CPSD wasn't named a Real Party of Interest until 48 hours after his wife Paula Bergan was served. How did the Kingsbury County Sheriff even know

15.

to serve Joel Bergan when Shantel Krebs was the only named Respondent on August 1, 2018? **Jesus could walk on water, but the Sheriff is not clairvoyant**. There's no reasonable condition upon which the Kingsbury County Sheriff could have known that Joel should be served unless he was a party to the conspiracy. Since Hubbel & Joel were so kind as to admit a conspiracy had been created by Dan Lederman, Gordon Howie and Shantel Krebs, that explains how service on Joel instead of Gordon Howie could have come about.

We have evidence that proves Gordon Howie told Shantel Krebs to serve the Writ of Prohibition upon Joel Bergan, and not upon Gordon Howie himself. Hubbel stated in open Court before the Honorable Federal District Court Judge Roberto A. Lange on 09/27/2018 that the date on Joel's letter of resignation was a typo. Unfortunately for Hubbel, we have irrefutable proof that Hubbel forged this evidence and offered that forged evidence to this Court. Conduct this egregious constitutes a felony. Joel Bergan in fact resigned on July 21, 2018, and not on August 21, 2018 as Hubbel now contends. We would be very happy to offer this fact evidence in open court, if the Court wishes us to do so.

Since no issues going to the merit of case 18-147 or #28701 have been reviewed by either Court, no res judicata or collateral estoppel preclude the Plaintiff, Dr. Terry Lee LaFleur from bringing his Article III civil action before this Court, or in the 18-4125 case. Res judicata and collateral estoppel do not apply as to the Intervenor because the Intervenor only appeared in 18-147 to prove the two issues enumerated above. No other issues the Circuit

16.

court may or may not have decided would have any effect on the Intervenor is this case at bar.

The doctrine of privity of is a common law principle which provides that a contract cannot confer rights or impose obligations upon any person who is not a party to the contract.

Here, the Intervenor was not in privity with the CPSD. He was only intervening to protect his own property right interests as candidate for Governor. Intervenor was not a licensed Attorney and therefore, could not represent the alleged CPSD Respondent, even if the CPSD had been named in the Writ of Prohibition when served on August 1, 2018.

The premise is that only parties to contracts should be able to sue to enforce their rights or claim damages as such. However, the doctrine has proven problematic because of its implications upon contracts made for the benefit of third parties who are unable to enforce the obligations of the contracting parties. In England and Wales, the doctrine has been substantially weakened by the Contracts (Rights of third Parties) Act 1999 which created a statutory exception to privity (enforceable third-party rights).

The Intervenor had no right to enforce any obligations for the CPSD. Intervenor was not a sitting Central Committee member at the time of the hearing. Since not one current sitting member of the CPSD was served, not only didn't the Circuit court have proper service of process over the CPSD, but the CPSD was deprived any ability to mount a defense at all.

Judge DeVaney denied every reasonable request made by the Intervenor. She also refused to allow Mike Gunn to represent the CPSD/himself as Chairman at the hearing on

17.

August 16, 2018. Judge DeVaney cited some obscure case law addressing Corporations as entities, and that as such, the Corporation cannot represent themselves at trial. These cases were not on point; and I believe the 18-147 is a case of first impression here in South Dakota.

In fact, Hubbel admits in her Resistance here, that "Shantel Krebs knew Joel was not the current chair of CPSD because we had given her the SOS filings showing Gordon Howie was [Chairman]. She (i.e. Shantel Krebs) told us to "hold" any more filings until after the hearing." This clearly indicates that Shantel Krebs conspired with Hubbel and Company to pull off a coup d'état of the real CPSD's statewide Convention held on July 14, 2018. That also means Krebs perjured herself at the hearing on August 16, 2018 by fraudulently offering evidence to Judge DeVaney that Joel was in her opinion the current CPSD Chairman.

The Petitioner knew that the CPSD had few assets in order to hire an attorney. The Intervenor had pro bono legal counsel the night before the hearing, but Gordon Howie made certain that we wouldn't even have that legal counsel available to us the next day. Gordon approached David Braun and offered David money and David agreed to take it. David and I had an attorney/client relationship that went back to April 2018 when Shantel Krebs threw my campaign under the Republican Party Bus. The agreement below shows that we had an attorney/client relationship as a CPSD candidate for governor going before the Convention in Pierre, SD on August 14, 2018:

18.

*Braun Law*
*You Deserve the Best*
*David L. Braun*
*605 N. Taylor*
*Pierre, SD 57501*

*I/ we hereby retain David L. Braun as my/our attorney in fact to represent my/our legal interests in the following described matter:*

*Draft and file necessary documents including a Writ of Mandamus in the event legal services are needed to require the South Dakota Secretary of State's Office to certify and place on the November 2018 election ballot our party's slate of candidates as approved and ratified by our party at its convention in Pierre, South Dakota, on or about August 14th, 2018.*

*David L. Braun agrees that he will draft and file the necessary paperwork and obtain a hearing date, if necessary, on a pro bono basis and without legal charge, except for any incurred out of pocket expenses including, but not limited to filing fees, copying costs, travel, long distance calls, etc. which will be paid up front before any legal work is commenced.*

*In the event an actual hearing or subsequent legal work is needed following filing of the paperwork with the court, I/we agree to pay the sum of $125 per hour plus tax any additional expenses incurred in this matter.*

*We are paying $500 00 as a retainer to be applied to initial out of pocket costs which will be refunded in the event the same are not incurred. An additional retainer fee will be required if legal services are requested following the filing of the initial documents, which amount will be determined and agreed upon at that time.*

Dated: *August 10, 2018*

*Terry LaFleur*

## THIRD PARTY RIGHTS

Privity of contract occurs only between the parties to the contract, most commonly contract of sale of goods or services. Horizontal privity arises when the benefits from a contract are to be given to a third party. Vertical privity involves a contract between two parties, with an independent contract between one of the parties and another individual or company.

If a third party gets a benefit under a contract, it does not have the right to go against the parties to the contract beyond its entitlement to a benefit. An example of this occurs when

a manufacturer sells a product to a distributor and the distributor sells the product to a retailer. The retailer then sells the product to a consumer. There is no privity of contract between the manufacturer and the consumer.

Here, the Intervenor had no expectations of success, other than to run for the office of Governor as a CPSD candidate. Intervenor had neither horizontal or vertical privity with the CPSD. No third-party benefit was conferred on the Intervenor. In fact, either way this turns out, the Intervenor is injured in fact and it is fairly traceable to Shantel Krebs conduct as a Constitutionally elected Secretary of State for South Dakota. Because the Intervenor was deprived of even the chance to run by Ms. Krebs plot to take down the CPSD.

This, however, does not mean that the parties do not have another form of action: for instance, in Donoghue v. Stevenson (cite omitted) – a friend of Ms. Donoghue bought her a bottle of ginger beer, which contained the partially decomposed remains of a snail. Since the contract was between her friend and the shop owner, Mrs. Donoghue could not sue under the contract, but it was established that the manufacturer was in breach of a duty of care owed to her. Accordingly, she was awarded damages in the tort of negligence for having suffered gastroenteritis and "nervous shock."

Under this theory, the Intervenor has an Article III action against the defendants for depriving the CPSD from getting its legally nominated and elected candidates on the November 2018 Ballot. Just like Mrs. Donoghue could not sue under the contract, she established an action in breach of the manufacturer duty of care owed to her.

20.

The Intervenor could hold the defendants culpable, even the CPSD if he so chose to do so. From all intents and purposes, culpability abounds to all parties in this mess. A lot of egos and stubbornness have gone unchecked by the plaintiff's and the defendant Shantel Krebs. The Intervenor is in fact holding the National CP culpable for Franks role in the scheme of things arising out of the coup d'état of the CPSD Convention in 18-4125.

The Intervenor was not a current sitting member of the CPSD Central Committee. The Intervenor only discovered the existence of the 18-147 hearing due to a story published in the South Dakota War College Blog. Consequently, the Petitioner, Dan Lederman could just as easily served Lori Stacey, James Bialota, Mike Gunn and even Gordon Howie prior to the hearing on August 16, 2018. Gordon Howie was appointed as Vice-Chairman of the SDCP Committee by Joel Bergan on July 21, 2018 at the secret meeting in Chamberlain, SD and then Joel resigned. Under Robert's Rules, Gordon Howie became Chairman of the SDCP. Why didn't Dan Lederman serve Gordon Howie. Oh, that's right, Gordon told Shantel Krebs not to serve the Writ of Prohibition on him, but rather have it served on Joel Bergan. ??????

By offering on one piece of fact evidence, the Intervenor can completely defeat Hubbel and Johnsons entire lawsuit in 18-4108.

If Joel factually resigned on July 21, 2018, then Joel could not certify the ticket from the Hubbel Convention held at the Ramkota Inn on August 14, 2018, which Joel actually certified. Under both our By-Laws and SDCL Codified Law, only the legal Chairman of the Central Committee is authorized to certify the CPSD ticket to Shantel Krebs, the Secretary of State for

21.

South Dakota. Joel could not certify the ticket because Joel resigned on July 21, 2018 and Shantel had proof of this fact in her hands prior to the hearing in Pierre, SD on August 16 2018.

So let's talk about what we know to be true factually: (1) Lora Hubbel lied about resigning on February 2, 2017; (2) Regardless of whether Hubbel resigned or not, Hubbel left the CPSD and registered as a Republican sometime in early to mid-2017, (3) Hubbel ran for Governor and Senator contemporaneously in the years 2017 and 2018, (4) Hubbel lost her race for state Senate in the June 5, 2018 Republican Primary, (5) Hubbel was not registered as a CPSD voter on the evening of July 14, 2018, (6) Hubbel lied on July 12, 2018 about still being the Chairman of the CPSD, (7) Frank Fluckiger, Marilee Roose, Lora Hubbel, Gordon Howie, Dan Lederman, Shantel Krebs, Joel and Paula Bergan, Matt Johnson, Janette McIntyre, Marty Jackley, Ann Mines Bailey and others all conspired to oust Lori Stacey as the Legal Chairman of the CPSD and replace her with Lora Hubbel and/or Joel Bergan because Jackley wanted more Ballot competition against Noem in the November general election. See Hubbel's Response.

(8) On July 13, 2018, Shantel Krebs allowed Lora Hubbel, a previous candidate for Governor on the Republican ticket to call a Statewide Convention as the Chairman of the "South Dakota Constitution Party" a party that doesn't even exist anywhere in the State of South Dakota. (9) Justin L. Bell, attorney for Dan Lederman admitted this fact in open court on August 16, 2018. An admission that has been omitted from the transcript. For some unknown reason this statement was excluded from the court transcript, but everyone present heard Justin say it. Its probably one of those facts that doesn't fit their narrative, so it was erroneously omitted.

22.

(10) Numerous times the AG states that proper notice was not given to the Secretary of State on the calling of the Convention held on August 14, 2018 by Lori Stacey. But this claim is factually not true. Ms. Stacey substantially complied with SDCL § 12-5-17:

> 12-5-17. Biennial state convention--Time and place--Notice to secretary of state. Each political party shall hold a state convention in each even-numbered year in which they are necessary for the purposes of § 12-5-21. The time and place of holding such convention shall be determined by the State Central Committee of each political party, **the chairman of which shall notify the secretary of state at least thirty days previous to the date so chosen**.

Lori Stacey filed her notice in compliance with SDCL § 12-5-17 on July 15, 2018 at 11:55 pm. Looking at a calendar for 2018, we can note that Ms. Stacey's Convention call is 32 days out from August 14, 2018, and 31 days out if we don't count Sunday the actual date of notice. Moreover, 12-5-17 does not require 30 working days. Merely 30 days prior notice. This is without back dating receipt by Shantel Krebs. (11) On the other hand, Lora Hubbel's unauthorized (i.e. illegal Convention) Calling was received via email by Shantel Krebs, and Krebs back dated Hubbel's Convention Call to July 13, 2018. How, or why would anyone call a second Convention a day before the first Convention had even occurred? Did Hubbel know something that Lori Stacey did not? (12) The next "ah-hah" moment comes on July 12, 2018. In an email message between Lora Hubbel and Marillee Roose from Utah, Marilee states, "There is no way to get her [(i.e. Lori Stacey)] out. It has to be done at Convention." See page 24. This statement tends to make one believe that Ms. Stacey was the legal Chairman and that there was a preconceived conspiracy to remove her with force if necessary:

23.



(13) If Ms. Stacey was in fact not the legal Chairman of the CPSD, why did Frank, Shantel,

Hubbel and Company have to go through all these back-door procedures to take her out?  Why

all the secrecy?  They could have called a meeting and had a no confidence vote.  (14) Joel

Bergan is related to Kristi Noem and has every motive to lie about not having a meeting on

February 2, 2017.  However, I don't believe he is smart enough to realize that a

24.

teleconference call can constitute a meeting. That's what happened on February 2, 2017. Ms. Stacey and Kurt Evens called Joel. Joel was in Hutchinson, KS because Joel drives truck for a living. Ms. Stacey advised Joel that he was Chairman in accordance with Robert's Rules, but Joel declined the duties. In essence Joel appointed Ms. Stacey Interim Chairman and he resigned. Ms. Stacey became Chairman in accordance with Robert's Rules. Then Ms. Stacey appointed Joel back as Vice-Chairman which is what Joel wanted all along.

On February 6, 2017 Ms. Stacey filed the SDCL § 12-27-6 Statement of Organization, and it was both received and filed by the Secretary of State's office on February 6, 2017 at 3:55 pm. Now, the AG is going to argue that notice to Shantel Krebs must be by a writing. Well, we have that covered too. We have email messages between Rachael Schmidt and Lori Stacey, and also an email message between Shantel Krebs and Lori Stacey clearly establishing a writing in substantial compliance with SDCL § 12-5-14. See Exh C and D.

No official form has been promulgated by the SD Secretary of State to provide notice in situations where a change of central committee structure or when an address change has occurred. Historically, SDCL § 12-27-6 has been utilized by all political parties to update prior filings.

Rachael Schmidt is the "election coordinator" for the SD Secretary of State's office. This seems to be a high-level position and not just a lower level employee. "Election Coordinator" is an important title. Rachael Schmidt advised Lori Stacey to log in and click on the 12-27-6 Statement of Organization tab, and update the record indicating Hubbel's resignation. This

25.

constitutes absolute proof that Shantel Krebs knew that Lora Hubbel had in fact resigned on

February 2, 2017.  Moreover, Shantel's official duties would have put her on official notice of

this prior fact because Hubbel had to register Republican and file a Statement of Organization

as a Campaign and as a candidate for Governor and Senator.  All of these statutory

requirements show clearly that Shantel Krebs is in fact a co-conspirator with the other

defendants in the coup d'état of the CPSD Statewide Convention held on July 14, 2018.  Either

Krebs was in fact involved in the coup d'état or she was extremely derelict in the performance

of her official duties as SD Secretary of State.

On July 17, 2018 Lori Stacey appointed Mike Gunn as Vice-Chairman after Joel

automatically resigned to assume the position of Chairman.  On August 4, 2018, Lori Stacey

officially resigned her position on the CPSD Central Committee.  Under Robert's Rules, Mike

Gunn became Chairman of the CPSD on August 4, 2018.  Mike Gunn filed the SDCL § 12-27-6

Statement of Organization on August 9, 2018 and he emailed Krebs to provide notice under 12-

5-14:

---------- Forwarded message ---------- From: Krebs, Shantel Shantel.Krebs@state.sd.us Date:
Thu, Aug 9, 2018 at 4:58 PM

Subject: Re: Constitution Party info.

To: mike gunn <mgunn41.2000@gmail.com>

Cc: "Warne, Kea" <Kea.Warne@state.sd.us>

Acknowledge receipt.

Shantel Krebs

605.351.5916

> On Aug 6, 2018, at 10:34 PM, mike gunn <mgunn41.2000@gmail.com> wrote:

> There is a letter to show a change in the Constitution Party of Leadership. Please inform me of receipt of this email. I will be contacting your office soon about getting into the website to create an updated Statement of Organization. If you have any questions, please feel free to contact me at 605-951-3906. Evening of being sent is 08/06/2018 at or around 10:29 pm.

However, Shantel Krebs did not file Mike's Statement of Organization until August 22, 2018. Neither Joel Bergan or Gordon Howie filed their 12-27-6 Statement of Organizations, nor did they notify Shantel Krebs of their official status in a writing in accordance with SDCL § 12-5-14. In fact, Shantel Krebs told Gordon Howie to not file his statement of organization. In an email admitted into evidence at the hearing in Pierre on the August 16, 2018, the AG and Petitioner's counsel offered the email between Kia Warnes and Shantel Krebs, stating that according to Krebs database records, no one other than Joel Bergan was identified as Chairman of the CPSD. Interestingly enough, Joel never filed the requisite 12-27-6 Statement of Organization. To date, only Lori Stacey and Mike Gunn have officially filed the SDCL § 12-27-6 Statement of Organizations.

Just like with Mike Gunn, Shantel Krebs recognized Lori Stacey's status as the newest CPSD Chairman. (See Exh. D) Additionally, the NCP also officially recognized Lori Stacey as the CPSD Chairman:

| Close | | 2018 Full National Cmte List_4.11.18 DOCX - 67 KB | | | | | ⬆ |
|---|---|---|---|---|---|---|---|
| | Patrick Tyndall | Ridge Dr. 146 Woodside Rd. | Simpsonville | SC | 29680-6945 | 864.243.2615 | None |
| | Dr. Thomas Kendall | 1817 Woodruff Rd. | Greenville | SC | 29607 | 864.423.5885 865.234.7000 | tomjankendall@gmail.com |
| 2018 Dues Pd | SOUTH DAKOTA -- Midwest States Area: 2 + 3 ballot access + 1 Electoral College (3) + 0 - 2017 state assessment = 6 | | | | | | |
| | Lori Stacey | P. O. Box 88041 | Sioux Falls | SD | 57109 | 605.400.3568 | sdakotacp@yahoo.com |
| 3/18 | Joel Bergan | 20076 450ᵗʰ St | Arlington | SD | 57212 | 605.203.1365 | berganjoel@gmail.com |
| | Kurt Evans | None | Wessington Springs | SD | None | 605.630.9372 | none |
| | Joy Howe | None | None | None | None | None | none |
| 2018 Dues Pd | TENNESSEE -- Southern States Area: 2 + 0 ballot access + 2 Electoral College (11) + 1 -- 2017 state assessment = 5 (NOTE: paid $300 towards 2018 state assessment) | | | | | | |
| | Randy Barlow | 2421 York Highway | Gainesville | TN | 38562 | 931.268.0941 | randybarlow@msn.com |
| 3/18 | Darrell L. Castle and | 2586 Hocksett Cove | Germantown | TN | 38139 | 901.624.3884 | dlc25861@aol.com (Darrell) dlc2586@aol.com (Joan) |
| 3/18 | Joan Castle James Headings | P.C. | Email | ☑ Word | | Save 521 | jim1950@tds.net |
| | Mike Warner | P.O. Box 3284 | Clarksville | TN | 37043 | 931.268.0941 | Mike@TennesseeWatchman Mike.warner@cpoin.com |

27.

Therefore, Mike Gun was and is the legal Chairman of the CPSD.  And Dan Lederman, the Chairman of the Republican Party of South Dakota, Shantel Krebs the previous Secretary of State for South Dakota, Lora Hubbel, Frank Fluckiger, Marilee Roose, Ann Mines Bailey, Matt Johnson and Marty Jackley all conspired to prevent the CPSD from getting any statewide candidates on the November Ballot so that their handpicked candidate Kristi Noem would go unchallenged for the governor's race.  Billi Sutton was a non-factor candidate.

Respectfully Submitted,

Dr. Terry Lee LaFleur
4601 E. Clark St. Apt. 8
Sioux Falls, South Dakota  57110
Attorney Pro Se (605) 413- 0274

PROOF OF SERVICE

The undersigned certifies that a true copy of the foregoing was served

✗ Via US Mail postage Prepaid

on each party or their Attorney at their last known address on this 25th day of _February_ , 2019.

Dr. Terry Lee LaFleur

Copy to:

Attorney General Jason Ravnsborg
1302 E. Hwy 14. Ste. 1
Pierre, South Dakota 57501
Attorney for Respondent Barnett

Lora Hubbel
4605 W.  Graceland Ct.
Sioux Falls, South Dakota 57106

Matt Johnson
204 S. 7th Ave.
Brandon, South Dakota 57005

Steven Bartlett
500 E. Capital Ave. Ste. 204
Pierre, South Dakota 57501

## Attachments

**Exh D:**                                          **Exh. B:**



**Exh. C:**                                          **Exh. A:**



29.

From: Lori Stacey [mailto:dakotacp@yahoo.com]

Sent: Sunday, February 05, 2017 4:39 PM

To: Schmidt, Rachel

Subject: Re: YEAR END Campaign Finance Report due by Febuary 6, 2017 5PM


Rachel,


I was having difficulties getting into the online campaign finance system.  I will be scanning and emailing both committee reports as I normally do but here are the leadership changes for the party and a change of address.


Constitution Party of South Dakota

48106 Spring Valley Place

Brandon, SD 57005


Dear Secretary Krebs,


Lora Hubbel has decided to step down as State Chairman.


The State Central Committee met on Thursday evening,  February 2, 2017 to fill vacancies due to State Chairman's resignation.  The new and current party officers are as following:

3

Joel Bergan will remain State Party Vice-Chairman.

Kurt Evans has become the new State Party Secretary.

Lori Stacey will resume duties as State Party Chairman and remain Treasurer.

Thank you,

Lori Stacey

State Chairman

Constitution Party of South Dakota

On Wednesday, February 1, 2017 11:50 AM, "Schmidt, Rachel" <Rachel.Schmidt@state.sd.us> wrote:

Reminder, the Year-End report is due by 5:00pm CT on February 6, 2017. The report must be received by our office by 5:00 pm no matter how it was sent. If you are receiving this email reminder, you have a report due.

Our office still has over 250 committees left to file, do not wait until the last minute to file. If you wait until the last minute with questions and filing your report, we cannot guarantee responding right away.

If you file by paper, call to confirm that our office has received your report. If you file online, you will receive a confirmation email that it has been approved or returned for revisions.

From: Schmidt, Rachel

Sent: Tuesday, January 24, 2017 8:39 AM

Cc: SD Campaign Finance Reporting System

Subject: FW: YEAR-END Campaign Finance Report due by Febuary 6, 2017 5PM