UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| G. MATT JOHNSON, and LORA HUBBEL, | 4:18-CV-4108-RAL |
| Plaintiffs, | |
| vs. | OPINION AND ORDER RULING ON PENDING MOTIONS AND DISMISSING CASES |
| TERRY LEE LAFLEUR, | |
| Intervenor Plaintiff, | |
| vs. | |
| STEVEN BARNETT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF SOUTH DAKOTA, | |
| Defendant. | |
| DR. TERRY LEE LAFLEUR, IN HIS PERSONAL AND OFFICIAL CAPACITY AS CANDIDATE FOR GOVERNOR OF SOUTH DAKOTA, | 4:18-CV-4125-RAL |
| Plaintiff, | |
| vs. | |
| STATE OF SOUTH DAKOTA, SHANTEL KREBS, IN HER PERSONAL AND OFFICIAL CAPACITY AS SECRETARY OF STATE FOR SOUTH DAKOTA; STEVEN BARNETT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR SOUTH DAKOTA; DAN LEDERMAN, IN HIS PERSONALD AND HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE REPUBLICAN PARTY OF SOUTH DAKOTA; | |

| LORA HUBBEL, GORDON HOWIE, JOEL BERGAN, MARILEE ROOSE, FRANK FLUCKIGER, IN HIS PERSONAL AND OFFICIAL CAPACITY AS CHAIRMAN OF THE NATIONAL CONSTITUTION PARTY; AND MATT JOHNSON, JOINTLY AND SEVERELY, | |
|---|---|
| Defendants. | |

These two cases are very closely related, arising out of the same set of facts and circumstances. Indeed, this Court has taken judicial notice of all filings in 18-CV-4108-RAL as a part of its consideration of matters in the second-filed case of 18-CV-4125-RAL. 18-CV-4125-RAL, Doc. 22. Both cases relate to a dispute in 2018 over who, if anyone, should be listed on the South Dakota ballot as candidates for the Constitution Party of South Dakota (CPSD). The CPSD had fractured into two dueling factions, both which wanted its candidates, and only its candidates, as those representing the CPSD on the state ballot in November of 2018. A state judge, in August of 2018, ruled that no CPSD candidate should appear on the 2018 ballot. Plaintiffs G. Matt Johnson (Johnson) and Lora Hubbel (Hubbel) then sued seeking injunctive relief before this Court to have them and their faction of CPSD candidates placed on the 2018 ballot. 18-CV-4108-RAL, Doc. 1. This Court held a hearing on September 27, 2018, allowed Terry Lee LaFleur (LaFleur) to intervene in that case, and on October 1, 2018, issued an Opinion and Order Denying Preliminary Injunctive Relief. 18-CV-4108-RAL, Docs. 32, 33. LaFleur then brought his own case naming the South Dakota Secretary of State, along with Johnson, Hubbel, and others as Defendants. 18-CV-4125-RAL, Doc. 1. There are pending motions in both cases. Because the facts and issues in the two cases overlap, this Court addresses all pending motions in this single Opinion and Order. Because this Court is ruling on a motion to dismiss in 18-CV-4108-RAL, and

2

is screening 18-CV-4125-RAL, this Court is mindful to take the facts from the well-pleaded allegations of the amended complaints in each of the cases. However, this Court first summarizes the common core of undisputable facts between the two cases.

## I.    Common Core of Facts

Shantel Krebs was the duly-elected Secretary of State for South Dakota and held that position at all relevant times during 2018. Under Rule 25(d) of the Federal Rules of Civil Procedure, her successor in office Steve Barnett is now a named defendant in both cases. This Opinion and Order will refer to the actions of the "Secretary of State," who at the relevant time was Krebs.

Johnson is a CPSD member who claims to have been the duly-nominated CPSD candidate for U.S. House of Representatives from South Dakota for the November of 2018 election. Hubbel and LaFleur both are CPSD members who have competing claims to have been the duly-nominated CPSD candidate for Governor of South Dakota in the November 2018 election. CPSD is a fledgling political party in South Dakota that presently is embroiled in turmoil over both who is the chairman of the party and who the party's candidates for the November of 2018 election should have been.

The controversy over who is the CPSD chairman and, in turn, over whose submissions to the South Dakota Secretary of State deserve credence has roots back in 2017. Before February 2, 2017, Hubbel was CPSD's chairman, and the documents on file with the Secretary of State reflected that Hubbel was CPSD's chairman. 18-CV-4108-RAL, Doc. 29-1 at 13. On February 2, 2017, Hubbel resigned as chairman because she planned to rejoin the Republican Party, thereby leaving the chairmanship to the vice-chairman Joel Bergan (Bergan). Id. at Doc. 29-1 at 15–16. Bergan initially waffled about whether he wanted the responsibility of CPSD chairman, and Lori

Stacey (Stacey), who was CPSD's Secretary/Treasurer, seemingly assumed the position as chairman, though Bergan likewise had some claim to being chairman. LaFleur believes that Stacey was the actual CPSD chairman as of February of 2017, and points to the Statement of Organization filed by Stacey with the Secretary of State and approved on February 6, 2017, listing Stacey as CPSD's Chairman and Treasurer. Id. at Doc. 29-1 at 20; Doc. 31. Johnson and Hubbel believe that Stacey never could be CPSD chairman because she was not a South Dakota resident, that she filed the form with her name listed as chairman in error, and that the chairmanship remained with Bergan. Regardless, other than what can be taken from the Statement of Organization, the Secretary of State was not informed of a reshuffling of CPSD's officers in February of 2017, and from the State's perspective the CPSD chairman remained Hubbel.

Hubbel, who had served in the South Dakota Legislature as a Republican in 2011–2012, ran unsuccessfully in the Republican primary in June of 2018 to become the Republican candidate for Governor of South Dakota. After losing in the Republican primary, on June 22, 2018, Hubbel rejoined the CPSD, id. at Doc. 29-1 at 31, and around the same time Johnson and another former Republican state legislator Gordon Howie (Howie) likewise joined the CPSD. Hubbel and Howie reportedly felt ostracized from the South Dakota Republican Party, the dominant political party in South Dakota. LaFleur became a CPSD member in April of 2018 and views Hubbel and Howie as part of a Republican Party plot to infiltrate and destroy the CPSD.

The existence of competing factions of the CPSD resulted in some chaos in the CPSD in July and August of 2018. The CPSD had a convention scheduled for July 14, 2018, at which it presumably intended to nominate candidates for some statewide offices. South Dakota law recognizes two main ways that individuals can become candidates for office: 1) through the primary election process found at SDCL § 12-6; and 2) by party nomination at a convention under

4

SDCL § 12-5. Haan v. Gant, No. CIV. 14-3009-RAL, 2014 WL 4743423, at *7–8 (D.S.D. Sept. 23, 2014). This controversy involves the convention process. When a political party nominates its candidates through a convention, SDCL § 12-5-17 imposes a notice requirement:

> Each political party shall hold a state convention in each even-numbered year in which they are necessary for the purposes of § 12-5-21. The time and place of holding such convention shall be determined by the State Central Committee of each political party, the chairman of which shall notify the secretary of state at least thirty days previous to the date so chosen.

SDCL § 12-5-17.[1] There appears not to have been notice given to the Secretary of State thirty days before the planned CPSD convention set for July 14, 2018, and indeed it appears two people believed themselves entitled to act as CPSD chairman as that convention neared.

---

[1]The constitutionality and in turn enforceability of the thirty-day prior notice provision is subject to question but not framed for this Court's decision here. Section 12-5-17 refers to conventions under § 12-5-21, which provides:

> The state convention shall nominate candidates for lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, and public utilities commissioner and in the years when a President of the United States is to be elected, presidential electors and national committeeman and national committeewoman of the party.

SDCL § 12-5-21. In early 2018, Judge Piersol held that "South Dakota's ballot access laws result in discrimination against new party candidates seeking an office not listed in SDCL § 12-5-21." Libertarian Party of S.D. v. Krebs, 290 F. Supp. 3d. 902, 915 (D.S.D. 2018). Because this unequal treatment was not justified by a compelling state interest, Judge Piersol concluded that it violated the Equal Protection Clause. Id. Apparently in response to Judge Piersol's ruling, the South Dakota Legislature enacted SDCL §§ 12-5-25 and 12-5-26. Section 12-5-25 provides:

> A political party with alternative political status may nominate a candidate for United States Senate, United States House of Representatives, Governor, and any legislative seat by convention, if the nomination is submitted with the proper documentation to the Office of the Secretary of State no later than 5:00 p.m. central time on the second Tuesday in August, of the year of the election. A candidate registered with a political party with an alternative political status may choose, if allowed by the party bylaws, to participate in a primary election by submitting a candidate petition no later than the last Tuesday of March in accordance with § 12-5-1.4.

SDCL § 12-5-25. Section 12-5-26 reads:

> A new political party may nominate a candidate for United States Senate, United States House of Representatives, Governor, and any legislative seat by convention, if the nomination is submitted with the proper documentation to the Office of the

On July 13, 2018, Hubbel contacted the National Constitution Party about Stacey's claim to be the CPSD chairman. 18-CV-4108-RAL, Doc. 29-1 at 21. A representative of the National Constitution Party sent an email message to Hubbel stating that documents at the Secretary of State's office showed Hubbel to remain chairman and that Stacey could not assume the position of chairman. Id. at Doc. 29-1 at 21. LaFleur vehemently disagrees with the National Constitution Party's position and has named in his latest complaint certain of those involved in the National Constitution Party as part of a conspiracy. 18-CV-4125-RAL, Doc. 43. The National Chair of the Constitution Party sent Stacey a letter telling her that she could not act as CPSD chairman. On July 13, 2018, Hubbel sent to the Secretary of State notice of a convention for the CPSD to be held in Pierre, South Dakota, on August 14, 2018. 18-CV-4108-RAL, Doc. 24 at ¶ 5; Doc. 29 at ¶ 21; Doc. 29-1 at 28. Hubbel signed the notice representing that she was the chairman of the CPSD. Id. at Doc. 24 at ¶ 5.

The CPSD convention on July 14, 2018, apparently was chaotic. Before Stacey arrived, Hubbel resigned as chairman to allow Bergan to be chairman, but Bergan was uncomfortable with the rules of order and wanted Howie to be acting chairman or perhaps convention chairman. LaFleur was there, and he and at least one other felt that the CPSD convention was being hijacked. Hubbel reports that her files were stolen during the convention, although LaFleur viewed them as being picked up after being abandoned. The convention ended without any slate of CPSD candidates being selected.

---

Secretary of State no later than 5:00 p.m. central time on the second Tuesday in August, of the year of the election.
SDCL § 12-5-26. Thus, if the CPSD had been proceeding under § 12-5-25 or § 12-5-26, the notice requirement in § 12-5-17 may not apply.

On Sunday, July 15, 2018, the Secretary of State received an email sent from or for Stacey giving notice that the CPSD would be holding a convention in Pierre on August 14, 2018. Id. at Doc. 24 at ¶ 6. Stacey stated in the email that she was the chairman of the CPSD. Id. at Doc. 24 at ¶ 7. On July 17, 2018, the Secretary of State, having now received two separate notices of a CPSD convention signed by two different people purporting to be CPSD chairman, sent a letter to the CPSD explaining that South Dakota law requires certification of the state party chairman to the Secretary of State. Id. at Doc. 24 at ¶ 7. The Secretary of State's letter asked CPSD to certify who held the position of party chairman. Id. at Doc. 24 at ¶ 7. On July 20, 2018, Hubbel sent the Secretary of State notice that Bergan had assumed the position of CPSD chairman. Id. at Doc. 24 at ¶ 8; Doc. 29-1 at 1.

On July 21, 2018, a group of CPSD members held a meeting "to establish an official full and functioning Constitution Party Board." Id. at Doc. 29 at ¶ 27. Apparently, Bergan resigned as chairman of the Hubbel/Bergan faction of the CPSD during this meeting and Howie became the chairman in the view of Johnson and Hubbel. Id. at Doc. 29-3; Doc. 29 at ¶¶ 27–28. LaFleur was neither present nor aware at the time of the meeting and considers the July 21 meeting to be a sham secret meeting. LaFleur stresses that some documents from the Hubbel/Bergan faction at this time refer to the "South Dakota Constitution Party" rather than the properly named "Constitution Party of South Dakota," although it is clear that the Hubbel/Bergan faction was not starting some new party but attempting to act for the existing CPSD.

On August 1, 2018, Dan Lederman (Lederman), the chairman of the South Dakota Republican Party, filed a state court action seeking a writ of prohibition against the Secretary of State to prohibit the Secretary of State from certifying the CPSD's candidates for the 2018 general election. Id. at Doc. 25-2. Lederman for the South Dakota Republican Party had taken legal action

to seek to keep candidates from the South Dakota Democratic Party and the South Dakota Libertarian Party off the ballot as well. Among other things, Lederman argued that the notices of convention from Hubbel and Stacey were improper under South Dakota law because neither woman was the duly elected or appointed chairman of the CPSD. Id. at Doc. 25-2. The case was assigned to the Honorable Patricia DeVaney, then a judge in South Dakota's Sixth Judicial Circuit.[2] Lederman served Bergan on August 1, 2018, believing him to be the proper person to serve for the CPSD based on filings with the Secretary of State. Id. at Doc. 22 at ¶ 6, Doc. 23 at 11. On August 3, 2018, Judge DeVaney issued an order temporarily prohibiting the Secretary of State from placing any CPSD candidates on the 2018 general election ballot and requiring that the Secretary of State appear for a hearing on August 16, 2018, to show cause why the temporary prohibition should not become permanent. Id. at Doc. 25-3. Lawyers for the Secretary of State from the South Dakota Attorney General's office participated by telephone when Lederman on behalf of the Republican Party obtained the temporary writ of prohibition, but no one from the CPSD participated.

Johnson and Hubbel allege that Howie told other board members of the CPSD that he had spoken with the Secretary of State and the two of them had decided that the CPSD should not send the Secretary of State a list of the new CPSD board members selected on July 21, 2018. Id. at Doc. 29 at ¶ 31. According to Johnson and Hubbel, Howie told the board members that doing so "would just confuse the issue." Id. at Doc. 29 at ¶ 31.

On August 6, 2018, the Secretary of State received an email from Stacey stating that she had resigned as CPSD chairman and that Mike Gunn (Gunn) now held the position. On August 14, 2018, the two competing factions of the CPSD held their conventions at two different hotels

---

[2]DeVaney has since been appointed to the Supreme Court of South Dakota.

in Pierre. Approximately 30 people attended the Hubbel/Bergan faction convention, while perhaps five people attended the Stacey/Gunn/LaFleur faction convention. On August 14, 2018, the Secretary of State received separate notices of two slates of CPSD candidates—one from each CPSD faction. Id. at Doc. 24 at ¶ 11; Doc. 29 at ¶ 32. The Hubbel/Bergan faction of the CPSD nominated Johnson for United States House of Representatives, Hubbel for Governor, Tara Volesky for Lieutenant Governor, and several candidates for the South Dakota House of Representatives. Id. at Doc. 24 at ¶ 11. The Stacey/Gunn/LaFleur faction nominated LaFleur for Governor, Rick Gortmaker for Lieutenant Governor, and Gunn for the Public Utilities Commission. Id.

Johnson and Hubbel allege that on August 15, 2018, Howie told other members of the CPSD board from the Hubbel/Bergan faction not to attend the August 16 court hearing. Id. at Doc. 29 at ¶ 33. According to Johnson and Hubbel, Howie said that the Secretary of State would "cover" for the CPSD because they were on the same side of the lawsuit, that he was "quite sure" the CPSD would be on the ballot after speaking with the Secretary of State, and that CPSD members who attended the hearing risked getting questioned and "tripped up" by the South Dakota Republican Party's counsel who was representing Lederman. Id. at Doc. 29 at ¶ 33. The Secretary of State disputes having given Howie any such advice. An attorney filed a notice of appearance on behalf of the CPSD in the state litigation, but withdrew before the hearing apparently because of the conflicting positions and infighting among CPSD members. Id. at Doc. 8 at 4; Doc. 25-1.

The state court hearing was held as scheduled on August 16, 2018. Id. at Doc. 25-5, Doc. 69-1. Lederman for the South Dakota Republican Party attended the hearing with counsel as did two assistant attorney generals representing the Secretary of State. Id. at Doc. 25-5, Doc. 69-1. LaFleur and Gunn were also in attendance, and Judge DeVaney allowed LaFleur to intervene in

the action. Id. at Doc. 25-5; Doc. 69-1 at 21. LaFleur made several statements on the record but was repeatedly admonished not to interrupt Judge DeVaney. Id. at Doc. 69-1. He left the hearing voluntarily approximately half way through, stating that he was not being treated fairly, that anything Judge DeVaney decided "does not effectually apply to my campaign," and that he would not be "kangarooed court by any reason by anyone." Id. at Doc. 69-1 at 71. Bergan did not attend the August 16 hearing. Although Johnson and Hubbel assert that Bergan was not at the hearing because the South Dakota Republican Party's attorney issued a belated subpoena to Bergan, id. at Doc. 8 at 4, Doc. 29 at ¶¶ 34–35, Bergan's affidavit suggests that he was nevertheless aware of the hearing before it occurred, id. at Doc. 22 at ¶¶ 3–6. The attorneys for the Secretary of State at the hearing largely acceded to Lederman's aim to have no CPSD candidates on the ballot. Id. at Doc. 69-1.

Judge DeVaney issued an oral decision at the end of the hearing granting Lederman's petition for a writ of prohibition. Id. at Doc. 25-5; Doc. 69-1. Judge DeVaney reviewed South Dakota statutes and one case to conclude that the CPSD could "only lawfully submit one slate of candidates to be certified for the ballot." Id. at Doc. 69-1 at 92. Judge DeVaney then considered whether either slate of CPSD candidates were properly nominated through a valid convention and concluded that the Stacey faction of the CPSD failed to satisfy the South Dakota statute for timely notice to the Secretary of State. Id. at Doc. 69-1 at 92–103. Judge DeVaney also deemed the CPSD bylaws to require more timely conventions than what either CPSD faction had. Id. at Doc. 69-1 at 105. Judge DeVaney deemed the notices of convention from Hubbel and Stacey both to be improper under the CPSD's bylaws because the bylaws require that a convention be held within sixty days of the primary election and because the August 14, 2018 dueling conventions were more

than sixty days past the June 5, 2018 primary election.[3]  Based on the lack of proper notice of convention as required by statute and bylaws and the lack of substantial compliance with the statute, Judge DeVaney ruled that there could not be a certification of the CPSD nominees chosen at either of the conventions.  Id. at Doc. 69-1 at 127.  Judge DeVaney also questioned who held the office of CPSD chairman and, therefore, who could issue the notice of convention under SDCL § 12-5-17.  Id. at Doc. 69-1 at 106–124.

LaFleur filed an appeal of Judge DeVaney's decision to the Supreme Court of South Dakota.  Id. at Doc. 25-6.  On September 21, 2019, the Supreme Court of South Dakota dismissed the appeal because "the Court lacks jurisdiction due to improper service and the matter is moot."  Id. at Doc. 38-5.  The Order Dismissing Appeal did not come to this Court's attention until it was later filed in CM/ECF after this Court's Opinion and Order Denying Preliminary Injunction.  Id. Doc. 38-5; see 18-CV-4125-RAL, Doc. 28.

South Dakota contracts with an outside vendor to print the State's election ballots.  18-CV-4108-RAL, Doc. 24 at ¶ 13.  Because the vendor prints general election ballots for multiple states, the vendor sets deadlines by which the states must submit their ballot information.  Id.  If a state misses its deadline, the vendor will not guarantee that the work will be completed by the delivery date.  Id.  For the November 2018 election, the vendor required South Dakota to submit its ballot information before August 17, 2018, in order to receive the printed ballots by September 19, 2018, as required by state law, and to commence absentee voting on September 21, 2018, as required by both state and federal law.  Id.  On August 17, 2018, the Secretary of State certified the statewide

---

[3]According to Johnson and Hubbel, the CPSD decided during the July 21, 2018 meeting that this sixty-day window would not apply to the August 14, 2018 convention.  18-CV-4108-RAL, Doc. 29 at ¶ 28.

candidates to the county auditors under SDCL § 12-8-8.[4] The Secretary of State filed an affidavit

in this case saying that all ballots had been printed and delivered to all county auditors in

compliance with the requirements of SDCL § 12-16-1.[5] Id. at Doc. 24 at ¶ 15.

On August 21, 2018, Hubbel emailed the Secretary of State to say that Bergan had resigned

during the July 21, 2018 CPSD meeting and Howie had become the CPSD's chairman. Id. at Doc.

29-3. Hubbel attached the minutes for the July 21 meeting to show that Howie was the CPSD

chairman. Id. Absentee voting in South Dakota commenced on September 21, 2018, in

---

[4]Section 12-8-8 states:
> The secretary of state, not later than the third Tuesday in August at five p.m. before
> the general election, shall certify to the county auditor of each county within which
> any voters of this state vote for the officer or officers nominated at the preceding
> primary, whose certificates of nomination have been filed in the Office of the
> Secretary of State, or who have been regularly named or petitioned for filling of a
> vacancy, the name and description of each person so nominated. In years when a
> President and vice president are nominated and the national party conventions are
> held at such a late date as to make the foregoing provisions impossible, then, the
> secretary of state shall make the certification not later than seven days after
> nominations of such President and vice president.

SDCL § 12-8-8.

[5]Section 12-16-1 states:
> The county auditor shall provide printed ballots for each election in which the
> voters of the entire county participate. Except as provided in § 12-6-9, printed
> ballots for a primary election shall contain the name of each candidate who has filed
> for nomination and is approved. The printed ballots for the election of officers shall
> contain the name of each candidate whose nomination has been certified or filed
> with the county auditor in the manner provided by law unless the candidate is
> deemed elected by having no opposition. The names of the candidates shall appear
> on the ballot exactly as listed in the declaration of candidacy of the candidates'
> nominating petitions. Sample ballots shall be printed on paper of a different color
> from the official ballot but in the same form. The sample ballots and official ballots
> shall be printed and in the possession of the county auditor not later than forty-eight
> days prior to a primary or general election. The county auditor shall also prepare
> the necessary ballots if any question is required to be submitted to the voters of the
> county. Ballots for general elections shall be of the style and form prescribed in §§
> 12-16-2 to 12-16-11, inclusive.

SDCL § 12-16-1.

accordance with SDCL § 12-19-1.2[6] and 52 U.S.C. § 20302. Id. at Doc. 24 at ¶ 16. On September

27, 2018, this Court held a hearing on the request in Johnson and Hubbel's complaint for an

injunction. At the start of the hearing, this Court granted LaFleur's motion to intervene in 18-CV-

4108-RAL. Id. at Doc. 31; Doc. 33. This Court addressed an issue about sufficiency of service of

process, both allowing Johnson and Hubbel leave to file a second amended complaint and

concluding that Johnson and Hubbel had substantially complied with SDCL § 15-6-4(d)(6) for

service on the Secretary of State. Id. at Doc. 33. This Court considered the Dataphase factors and

denied a preliminary injunction for reasons that this Court expressed in part on the record and in a

subsequent written opinion and order. Id. at Doc. 33; see Dataphase Sys., Inc. v. C L Sys., Inc.,

640 F.2d 109, 113 (8th Cir. 1981) (en banc).

## II.    LaFleur's Case (18-CV-4125-RAL)

The day before the September 27, 2018 hearing, LaFleur filed his own separate case. 18-

CV-4125-RAL, Doc. 1. LaFleur has filed a number of amendments to his initial complaint. Id. at

Docs. 12, 15, 18, 38, 43. This Court notified LaFleur of its intent to take judicial notice of filings

in 18-CV-4108-RAL, Doc. 9, and then directed service, 18-CV-4125-RAL, Doc. 16. Thereafter,

this Court learned that the Supreme Court of South Dakota had dismissed LaFleur's appeal. Id. at

Doc. 22. This Court entered an order taking judicial notice of pleadings in 18-CV-4108-RAL,

directing cessation of service of process and directing LaFleur to show cause why judgment of

dismissal should not enter. 18-CV-4125-RAL, Doc. 22. In that order, this Court described how

the Rooker-Feldman doctrine and issue preclusion appeared to bar LaFleur's re-litigation of issues

pressed in his complaint and amended complaints. Id. at Doc. 22. LaFleur subsequently has filed

---

[6]Section 12-19-1.2 states: "Absentee voting shall begin neither earlier nor later than forty-six days
prior to the election including any voter identified as being covered by the Uniformed and Overseas
Citizens Absentee Voting Act (42 U.S.C. 1973ff-1)." SDCL § 12-19-1.2.

a response to order to show cause, which is styled as a "motion to amend complaint plaintiffs to show cause response; restatement of motion to recuse for dismissal in retaliation for filing judicial complaint against Judge Lange." Id. at Doc. 28. Thereafter, LaFleur filed yet another motion to amend complaint with an amended response to this Court's order, in which LaFleur restates his request for recusal. Id. at Doc. 38. In ruling on LaFleur's case, there are three issues for this Court to address in turn: 1) whether this Court should recuse itself; 2) whether this Court should allow LaFleur to amend his complaint; 3) whether LaFleur's complaints survive initial screening as LaFleur is proceeding pro se and in forma pauperis.

LaFleur's argument for recusal originally was made in a motion to recuse filed by LaFleur after the September 27, 2018 hearing and early during the pendency of his separate case. Id. at Doc. 6. LaFleur's motion focused on a comment by this Court to the effect that LaFleur "might have to pay" the filing fee, which was a passing comment this Court made during the lengthy September 27 hearing. The comment came after this Court inquired early in the hearing about what doctorate degree LaFleur had (as he was representing himself as Dr. Terry LaFleur). LaFleur disclosed that he held a juris doctorate degree. This Court then said that LaFleur "might have to pay" the filing fee. LaFleur contended that this Court prejudged his IFP motion and could be intent on punishing him for intervening in 18-CV-4108-RAL (which this Court had permitted LaFleur to do at the outset of the September 27 hearing). 18-CV-4108-RAL, Docs. 32, 33; 18-CV-4125-RAL, Doc. 6. This Court ultimately reviewed material showing that LaFleur was on social security disability and chose to grant LaFleur's motion to proceed in forma pauperis. 18-CV-4125-RAL, Doc. 9. This Court then denied LaFleur's motion for recusal. Id. at Doc. 9. LaFleur was dissatisfied with this Court not recusing itself and filed a disciplinary complaint against the

undersigned, which was summarily dismissed. LaFleur now seeks to have this Court recuse itself anew. Id. at Docs. 28, 38.

The standard for recusal is that a "judge must recuse from 'any proceeding in which [the judge's] impartiality might reasonably be questioned.'" United States v. Melton, 738 F.3d 903, 905 (8th Cir. 2013) (alteration in original) (quoting 28 U.S.C. § 455(a)). The standard is an objective one, in which the question posed is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Id. (quoting Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc)). In practice, the standard requires a showing that "the judge had a disposition so extreme as to display clear inability to render fair judgment." Id. (citation and internal marks omitted). "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." Fletcher v. Conoco Pipe line Co., 323 F.3d 661, 664 (8th Cir. 2003) (citation omitted). LaFleur has not met this burden. LaFleur's initial fear that this Court would not grant him IFP status did not materialize. LaFleur cannot then seek to disqualify this Court simply by filing a groundless disciplinary complaint for ruling in a manner LaFleur did not like. If the rule were otherwise, a litigant like LaFleur could constantly change judges on a case simply by filing groundless disciplinary complaints. LaFleur's motion to recuse is denied.

This Court next is faced with multiple motions by LaFleur to amend his complaint. LaFleur has filed one complaint and at least three amended complaints gradually broadening the claims and named defendants. 18-CV-4125-RAL, Docs. 1, 12, 15, 18, 38, 43. Leave to amend a complaint is to be freely granted under Rule 15(a)(2) of the Federal Rules of Civil Procedure. Rule 15(a), however, contemplates that a party can amend a single time before a responsive pleading is

filed. Rule 15(a)(1), concerning amending as a matter of course, allows a party to amend "its pleading underline once as a matter of course" before the responding party responds. Fed. R. Civ. P. 15(a)(1) (emphasis added). Rule 15(a)(1), strictly applied, could justify allowing only one amendment of the complaint. This Court, however, in the spirit of accommodating pro se litigant LaFleur will allow amendment of his complaint and will focus on the most recent amended complaint, 18-CV-4125-RAL, Doc. 43, in determining whether LaFleur has an allegation that survives initial screening.

In deciding whether to dismiss on initial screening of LaFleur's pro se IFP amended complaint, this Court must accept the well-pleaded allegations as true and draw all reasonable inferences in favor of LaFleur. Schriener v. Quicken Loans, Inc., 774 F.3d 442, 444 (8th Cir. 2014). Pro-se civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, though, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

This Court is permitted to allow proceedings in forma pauperis under 28 U.S.C. § 1915. Although the majority of that statute relates to litigation by prisoners, § 1915(e)(2) is not confined to prisoner litigation and states that "the court shall dismiss the case at any time if the court

determines that . . . (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see also Adams v. United States, No. 3:17CV00129 JLH, 2017 WL 4583256, at *2 (E.D. Ark. June 26, 2017) (collecting opinions from federal circuits holding that non-prisoner complaints can be screened and dismissed under § 1915(e)(2)(B)).

LaFleur fails to state a claim upon which relief can be granted for several reasons. LaFleur's latest iteration of his amended complaint names both the former and current Secretary of State and the current governor of South Dakota. 18-CV-4125-RAL, Doc. 43. The Rooker-Feldman doctrine bars his claim against the Secretary of State. "The Rooker-Feldman doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Four necessary elements for the Rooker-Feldman doctrine to apply are: "(1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district court proceedings commenced." Christ's Household of Faith v. Ramsey Cty., 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009); see Exxon Mobil, 544 U.S. at 284. Here all the elements of the Rooker-Feldman doctrine apply to LaFleur. Unlike Johnson and Hubbel, LeFleur intervened in the state court case and participated in the August 16 hearing before Judge DeVaney. 18-CV-4108-RAL, Doc. 69-1 at 21; Doc. 25-5. LaFleur appealed from the adverse ruling to the Supreme Court of South Dakota, which dismissed his appeal on September 21, 2018, for procedural error and for mootness. Id. at Doc. 38-5. LaFleur thereafter filed his complaint and various amended

complaints in 18-CV-4125-RAL and intervened in 18-CV-4108-RAL. LaFleur complains of the same injury or damage from not being a candidate for governor and wants for this Court to rule differently than the state court previously did. As this Court presaged in its order to show cause, the Rooker-Feldman doctrine bars any claim of LaFleur against the Secretary of State.

In the numerous amended complaints submitted by LaFleur, 18-CV-4125-RAL, Docs. 1, 12, 15, 18, 38, 43, LaFleur has gradually added more named defendants and more claims. His most recent amended complaint names twenty other individuals, in addition to the three state employees, and makes seven separate claims. However, each of those claims are tied to his assertion that he should have been the CPSD candidate for governor and thus are simply efforts to avert application of the Rooker-Feldman doctrine. For instance, Count I of the complaint alleges a conspiracy regarding the proper chairmanship of CPSD, which in turn led to the dueling factions and court ruling that no CPSD candidate had qualified for the 2018 ballot. Id. at Doc. 43. Count II of the latest amended complaint asserts an Americans With Disability Act claim in the caption, but simply avers that the Defendants by engaging in the conspiracy alleged by LaFleur "deprived [LaFleur] of his personal, Constitutional, and God given rights as an American citizen with a disability in a free society to obtain viable employment as Governor of South Dakota." Id. at Doc. 43. Count II alleges that the Defendants should have known LaFleur to be disabled because he has a chronic low back condition, but again relates to the same wrong of not allowing him to be CPSD's candidate for governor on the 2018 ballot. Relatedly, Count III for conspiracy to interfere with civil and political rights, Count IV for civil rights and elective franchise violation, and Count V asserting a due process violation all again relate to the alleged conspiracy that deprived LaFleur of being CPSD's candidate for governor. Counts VI and VII allege slander and libel, and defamation of character respectively. However, neither count sets forth a claim for either slander,

18

libel, or defamation of any nature. Count VI for slander and libel simply alleges that there was a "level of misinformation," again relating to what was occurring with the CPSD, while Count VII for defamation of character alleges in a conclusory manner that the defendants placed LaFleur "in a False light in the eyes of the People of South Dakota." Id. at Doc. 43. Such conclusory allegations are insufficient to survive dismissal. See Twombly, 550 U.S. at 555. LaFleur's most recent amended complaint will be dismissed for failure to state a claim.

## III.    Johnson and Hubbel's Case (18-CV-4108-RAL)

Defendants filed a motion to dismiss, Doc. 67, arguing that issue preclusion, the Rooker-Feldman doctrine, and an absence of standing bars the claims of Johnson and Hubbel. LaFleur as the intervenor in 18-CV-4108-RAL responded that: "the Intervenor respectfully joins the defendant, Steven Barnett, in his motion to dismiss civil case number 18-4108." 18-CV-4108-RAL, Doc. 82 at 5. However, LaFleur makes other assertions that could be understood as opposing arguments made by the Defendants. Id. at Docs. 73, 74, 77.

Johnson and Hubbel oppose the motion to dismiss. In ruling on the motion to dismiss, this Court applies the same standards discussed above on page 16 of this Opinion and Order. Johnson and Hubbel at this point seek what the Court would view as a declaratory judgment "telling the SD SEcreatry [sic] of States [sic] office to accept the most recent filings of the Hubbel-Johnson faction of the CPSD indicating that Matt Johnson is the Chair and that Lora Hubbel is Secretary/Treasurer" and that CPSD "be placed back on the SD Secretary of Sates [sic] website as a legitimate political party." Id. at Doc. 70 at 4.

For the reasons explained in this Court's prior opinion and order denying motion for preliminary injunction, the Rooker-Feldman doctrine does not apply to Johnson and Hubbel, like it applies to LaFleur. Neither Johnson nor Hubbel were named in the lawsuit brought in state court

and appealed to the Supreme Court of South Dakota. Unlike LaFleur, who intervened in the state action and actually appealed an adverse ruling to the Supreme Court of South Dakota, neither Johnson nor Hubbel intervened or appeared at any of the hearings. While arguably three of the four elements of the Rooker-Feldman doctrine apply to Johnson and Hubbel, this Court cannot say that Johnson and Hubbel were parties in state court, particularly where there was a great deal of confusion over proper service of the CPSD with the summons and complaint from the state court action and who was acting on behalf of the CPSD or the faction that had nominated Johnson and Hubbel for positions on the ballot. The Rooker-Feldman doctrine generally does not bar claims unless the federal court plaintiff was a litigant in the prior state court case. Lance v. Dennis, 546 U.S. 459, 465–66 (2006) (per curiam). Thus, the Rooker-Feldman doctrine bars LaFleur's claims against the Secretary of State but not those of Johnson or Hubbel. There are, however, two other reasons why the Court ought to dismiss Johnson and Hubbel's case. First, issue preclusion bars claims of Johnson and Hubbel regarding entitlement to placement on the 2018 ballot, and the issue of placement on the 2018 ballot is moot.

A federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also 28 U.S.C. § 1738 (full faith and credit statute regarding state court judgments). In determining whether issue preclusion applies, courts "should construe the doctrine liberally, unrestricted by technicalities." People ex rel. L.S., 721 N.W.2d 83, 90 (S.D. 2006). Judge DeVaney enjoined the Secretary of State from having CPSD candidates on the 2018 general election ballot and explained her decision during the August 16, 2018 hearing. Judge DeVaney reasoned that neither faction of the CPSD had satisfied South Dakota law for ballot access through party convention vote. An appeal—albeit not by

Johnson and Hubbel—of Judge DeVaney's ruling to the Supreme Court of South Dakota was dismissed for procedural error and for being moot. This Court of course does not sit as the appellate court to the Sixth Judicial Circuit to review or reverse what Judge DeVaney decided. Indeed, it would be unseemly under the federalism system of this country for a federal district court to do so, and principles of issue preclusion, full faith and credit, and comity call for deference to state court rulings, particularly on issues of interpretation and application of state statutes. See generally Simmons v. O'Brien, 77 F.3d 1093, 1095–96 (8th Cir. 1996).

The issue of whether any CPSD candidate and which of two dueling CPSD faction's candidates should have been on the 2018 South Dakota ballot now is moot. The election is concluded, and this Court cannot rule on an issue that is moot. See Stone v. Bd. of Election Comm'rs for City of Chicago, 643 F.3d 543, 544–45 (7th Cir. 2011) (concluding that a request to enjoin a city from enforcing a signature requirement during a specific election was moot once election occurred); Freedom Party of N.Y. v. N.Y. State Bd. of Elections, 77 F.3d 660, 662–63 (2d Cir. 1996) (per curiam) (holding that controversy over which party could run a candidate under a particular party name became moot once the election was held).

Johnson and Hubbel now seek to have this Court declare Johnson to be the chairman of the CPSD and Hubbel to be the Secretary/Treasurer, as well as to direct the Secretary of State to restore CPSD "as a legitimate political party" under their leadership. 18-CV-4108-RAL, Doc. 70 at 4. LaFleur wants himself to be returned "to a position prior to August 16, 2018 restoring Ballot access for the CPSD for 2022," presumably allowing him to be the CPSD governor candidate for 2022. 18-CV-4125-RAL, Doc. 43 at 10. However, resolution of which CPSD faction's candidates possibly belonged on the ballot and who should run the CPSD present nonjusticiable questions involving the internal management of a political party. The Supreme Court of the United States

has recognized that a dispute over political party governance generally "is not for the courts to mediate" absent some issue of constitutional dimension. <u>Democratic Party of U.S. v. Wisconsin</u>, 450 U.S. 107, 123–24 & n.25 (1981); <u>see also</u> <u>Irish v. Democratic-Farmer-Labor Party of Minn.</u>, 399 F.2d 119, 120 (8th Cir. 1968) ("The courts, generally and consistently, have been reluctant to interfere with the internal operations of a political party.") (per curiam); <u>Reform Party of Minn. v. Reform Party of U.S.</u>, No. 99 Civ.2052 DDA/FLN, 1999 WL 1285798, at *2 (D. Minn. Dec. 29, 1999). To grant Johnson and Hubbel, or alternatively LaFleur, an injunction or declaration of rightful entitlement to control of the CPSD at this point necessarily would require this Court to adjudicate a dispute over political party governance, which is the sort of question deemed "not for the courts to mediate." <u>Democratic Party</u>, 450 U.S. at 123. At this point, it appears that the CPSD will have to reconstitute itself as a political party under South Dakota law, which this Court cannot do on behalf of either faction of the CPSD as it existed in 2018.

## IV.  Conclusion

Therefore, for the reasons explained above, it is hereby

ORDERED that Defendants' Motion to Dismiss in 18-CV-4108-RAL, Doc. 67, is granted and that the request for declaration by the Plaintiffs in Doc. 70 is denied. It is further

ORDERED that the Motion to Amend Complaint as contained in Docs. 28, 38, and 43 in 18-CV-4125-RAL, are granted, but that the requests to recuse in those documents is denied. It is further

ORDERED that the most recent complaint in 18-CV-4125-RAL, Doc. 43, is screened and dismissed for failure to state a claim and that the Clerk of Court mail a copy of this Opinion and Order to all Defendants listed in 18-CV-4125-RAL, Doc. 43.

DATED this 28ᵗʰ day of June, 2019.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE